No. 51,044

STATE OF KANSAS, *Appellee,* v. JESSE A. RODRIQUEZ, *Appellant.*

(601 P.2d 686)

Opinion filed October 27, 1979.

*Paul M. Dent,* Kansas City, argued the cause and was on the brief for the appellant.

*Philip L. Sieve,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *Nick A. Tomasic,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

HERD, J.: Jesse A. Rodriquez was tried and convicted in a joint trial with codefendant Michael McClure of murder in the first degree (K.S.A. 21-3401) for the killing of Loydene Gorda. Each man gave a statement to police out of the presence of the other. The statements were admitted into evidence, with a limiting instruction, over Rodriquez's objection. From his conviction, Rodriquez appeals. We reverse and remand for a new trial.

On September 19, 1978, at approximately 3:30 p.m., the body of a young woman was discovered laying face down in the Kaw River in Wyandotte County. Police officer Randy Murphy was called to the scene. The investigation of the area revealed various

articles of clothing, a large pool of blood, several tree limbs and rocks covered with what was later determined to be blood. There were drag marks leading from the pool of blood to the water and the body was found to be brutally beaten about the face and head.

The investigation pieced together the events leading to the murder. It disclosed two men had met the victim, later identified as Loydene Gorda, at a bar by the name of Andy's Place, located in Kansas City, Kansas. The owner of the bar confirmed that Ms. Gorda had left his establishment between 10:30 and 11:00 p.m., the previous night, in the company of a man named Michael McClure and an unknown Mexican male. A pickup order was issued for the two men with a description of the car they were seen driving.

At noon on September 20, Rodriquez called the police and volunteered to come in for questioning that afternoon. At 3:30 p.m. Rodriquez and McClure appeared at police headquarters where each made a statement out of the presence of the other.

McClure's statement related that he and Rodriquez had picked up Ms. Gorda at Andy's Place between 10:00 and 11:00 p.m. on September 18. They left the bar with two six-packs of beer and took Rodriquez's 1969 or 1970 black over yellow Ford LTD, went by Ms. Gorda's house, then drove to a secluded area on a dirt road toward Holliday Drive and stopped on a spillway. The three got out of the car and walked up the road at which time the victim removed her clothes and had intercourse, willingly, with both men. McClure then stated he "got scared that she was going to say we raped her" so he hit her and then Rodriquez hit her, at which time she broke away and began running. Rodriquez chased and caught her and McClure hit Ms. Gorda with a rock "a couple of times." He stated Rodriquez also hit her with a rock. Thereafter, the woman's body slid down a slope towards the road. The two men dragged the body down an embankment and threw it in the river. He stated they then returned to the car and drove to appellant's mother's house where they lived.

Appellant Rodriquez's statement did not totally agree with that of McClure's. Rodriquez stated they met Dee Gorda at Skip's Bar, talked and drank beer for awhile, then left in his 1970 Ford LTD. They went "riding around", picked up a hitchhiker and took him home and then drove down by the river and parked by the spillway. He stated McClure went walking while he and Ms.

Gorda had intercourse in the back seat of the car. McClure returned and took Ms. Gorda for a walk down the road. They had been gone for about an hour and a half when he heard a woman's scream. He ran toward the screams and found McClure had hit the victim in the head with a brick. Rodriquez stated McClure said he had hit her because she scratched him. McClure asked him to help him, but appellant refused and returned to the car. McClure followed him to the car and asked him to help throw Ms. Gorda into the river. Rodriquez agreed and the two dragged the body to the embankment and threw it into the river. Defendant stated he didn't know whether Ms. Gorda was dead when he helped dispose of the body.

After the two men gave statements to the police, they were arrested and charged with first degree murder. Both defendants filed motions to suppress their statements and Rodriquez filed a motion to sever his trial from McClure's. The motions were heard on November 30, 1978, and the court denied the motion to suppress defendant's own statement. The trial court did not rule on the motion to suppress the codefendant's statement or the motion to sever. At trial, Rodriquez withdrew his motion for severance and agreed to a joint trial with McClure. After the jury was impanelled, the appellant renewed his motion to suppress the statement of his codefendant on the grounds it was hearsay and denied him his Sixth Amendment right to confrontation. The trial court denied the motion ruling the statement was cumulative to appellant's own statement and therefore harmless error with a limiting instruction to the jury. McClure's statement was admitted in evidence over Rodriquez's objection and an instruction was given limiting its application to McClure. Neither defendant testified..

The jury convicted both McClure and Rodriquez of first degree murder and Rodriquez appeals.

Appellant asserts as his first issue that the admission of McClure's nonjudicial statement into evidence denied him his constitutional right to confrontation, guaranteed by the Sixth Amendment of the U. S. Constitution. Rodriquez contends McClure's inculpatory statement, taken out of his presence, and admitted into evidence at their joint trial where McClure didn't testify, denied him his right to confront the witness and that the limiting instruction to the jury did not erase the damage. The

issue raises a question under *Bruton v. United States*, 391 U.S. 123, 20 L.Ed.2d 476, 88 S.Ct. 1620 (1968). There, the court held a defendant is deprived of his rights under the confrontation clause of the Sixth Amendment to the United States Constitution where the extrajudicial statement of a non-testifying codefendant inculpating the defendant is admitted and where the codefendant is not available for cross-examination, although an instruction is given limiting the use of the confession to the codefendant.

The *Bruton* rule has been well recognized by this court, *State v. Mims*, 220 Kan. 726, 733, 556 P.2d 387 (1976), and was most recently applied in *State v. White & Stewart*, 225 Kan. 87, 587 P.2d 1259 (1978); *State v. McQueen & Hardyway*, 224 Kan. 420, 582 P.2d 251 (1978); *State v. Edwards*, 224 Kan. 266, 579 P.2d 1209 (1978); and *State v. Sullivan & Sullivan*, 224 Kan. 110, 578 P.2d 1108 (1978).

In an action described by our court as a "softening" of the *Bruton* rule (*State v. Sullivan & Sullivan*, 224 Kan. at 113), the U. S. Supreme Court found a violation of the rule to be harmless error beyond a reasonable doubt where the codefendant's statement is only cumulative and other evidence overwhelmingly proves defendant's guilt. *Harrington v. California*, 395 U.S. 250, 23 L.Ed.2d 284, 89 S.Ct. 1726 (1969). Accord, *State v. Mims*, 220 Kan. 726.

The most recent pronouncement by the U. S. Supreme Court regarding *Bruton* is found in *Parker v. Randolph*, 442 U.S. 62, 73, 60 L.Ed.2d 713, 99 S.Ct. 2132 (1979). The Court held the *Bruton* rule is not violated if the defendant who complains of the admission of the codefendant's statement has himself confessed to the crime:

"The right protected by Bruton—the 'constitutional right of cross-examination,' [citation omitted] has far less practical value to a defendant who has confessed to the crime than to one who has consistently maintained his innocence."

The Court held the "admission of interlocking confessions with proper limiting instructions conforms to the requirements of the Sixth and Fourteenth Amendments to the United States Constitution." *Parker v. Randolph*, 442 U.S. at 75.

The Court's holding regarding the doctrine of interlocking confessions is at odds with statements in *State v. Sullivan & Sullivan*, where we found the doctrine of interlocking confes-

sions was not an exception to *Bruton* but was based on the harmless error rule set forth in *Harrington v. California,* 395 U.S. 250. The majority opinion in *Parker,* however, was joined by only four justices. Three justices dissented, one did not participate and one concurred in the result reached by the majority but rejected the law set forth in the opinion. In his concurring opinion, Justice Blackmun stated:

"I would be unwilling to depart from the traditional harmless error analysis in the straightforward Bruton error situation. Neither would I depart from the harmless error approach in interlocking confession cases. . . . The two confessions may interlock in part only. Or they may cover only a portion of the events in issue at the trial. Although two interlocking confessions may not be internally inconsistent, one may go far beyond the other in implicating the confessor's codefendant. In such circumstances, the admission of the confession of the codefendant who does not take the stand could very well serve to prejudice the defendant who is incriminated by the confession, notwithstanding that the defendant's own confession is, to an extent, interlocking. I fully recognize that in most interlocking confession cases, any error in admitting the confession of a nontestifying codefendant will be harmless beyond a reasonable doubt. Even so, I would not adopt a rigid per se rule that forecloses a court from weighing all the circumstances in order to determine whether the defendant in fact was unfairly prejudiced by the admission of even an interlocking confession." *Parker v. Randolph,* 442 U.S. at 78-9.

We find the Supreme Court is equally divided as to the law regarding interlocking confessions and we are not constrained to view the opinion as precedential. *Neil v. Biggers,* 409 U.S. 188, 34 L.Ed.2d 401, 93 S.Ct. 375 (1972). See also *Trans World Airlines, Inc. v. Hardison,* 432 U.S. 63, 73, 53 L.Ed.2d 113, 97 S.Ct. 2264 (1977).

Applying the existing law to the facts of this case, we find reversible error. Here, each codefendant made a statement. McClure's statement confessed his own guilt but also implicated Rodriquez. Rodriquez confessed he was present and helped throw the victim in the river but specifically denied hitting her. Although some evidence was admitted attempting to show the victim could have died by drowning, it is generally uncontroverted that the cause of death was from loss of blood as a result of the beating. The information charges Rodriquez murdered Ms. Gorda by beating her with rocks. The only evidence before the jury showing Rodriquez's participation in the killing is McClure's extrajudicial statement and that statement is devastating to Rodriquez's case. Its admission by the trial court, even with

a limiting instruction, cannot, by any stretch of the imagination, be deemed harmless error beyond a reasonable doubt. McClure was not available for cross-examination and Rodriquez was denied his right of confrontation. The error is of such magnitude it requires reversal and a new trial.

As a footnote to this issue, the State argues appellant waived his right to raise the constitutional question by withdrawing his motion to sever and going to trial in the joint trial. There is no merit to the argument. Appellant had the right to assume only admissible evidence would be admitted in the joint trial. He did not waive his right to object to hearsay evidence or the lack of confrontation in withdrawing his objection to a joint trial. It was appellant's duty to devise the strategy most favorable to his defense within the ethical rules. This, he did. The State's argument is without merit.

Next, appellant objects to admitting into evidence photographs of the battered body of the victim, claiming they were merely shocking and not relevant or material to matters at issue. The oft-stated rule regarding the admission of photographs was recently set forth in *State v. Words,* 226 Kan. 59, 61, 592 P.2d 129 (1979):

"Photographs are not rendered inadmissible merely because they are shocking or gruesome if they are relevant and material to the matters at issue. The admission of photographs of a decedent is not error when they are relevant to matters at issue, such as the cause and manner of death, and as an aid in understanding a pathologist's testimony."

Here, the photographs were properly used by the pathologist to support his medical opinion of the cause of death and are supportive of the conclusion that death resulted from the head wounds and loss of blood. In addition, while the admitted photographs are graphically illustrative of the brutal murder of Ms. Gorda, they do not compare with the photographs this court found gruesome and repetitive in *State v. Boyd,* 216 Kan. 373, 532 P.2d 1064 (1975). The point is without merit.

The final issue urged by appellant is the district court's denial of his motion for a directed verdict of acquittal at the end of appellee's case. We have already found that when the McClure statement is eliminated from the prosecution's case there is no evidence of Rodriquez striking a blow to Ms. Gorda. However, appellant's own statement placed him in the area in company

with the victim at the time of the commission of the crime. He also admits he helped dispose of the body and fled from the scene without making a report or seeking help. Applying the rule that a trial judge in passing on a motion for judgment of acquittal must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact therefrom, a reasonable mind, or rational trier of facts, might fairly conclude guilt beyond a reasonable doubt, we conclude guilt beyond a reasonable doubt is a fairly possible result and find the motion was properly denied. *State v. Gustin,* 212 Kan. 475, 510 P.2d 1290 (1973); *State v. Wilson & Wentworth,* 221 Kan. 359, 559 P.2d 374 (1977); *Jackson v. Virginia,* 443 U.S. 307, 61 L.Ed.2d 560, 99 S.Ct. 2781 (1979).

The judgment is reversed, the sentence set aside, and the case is remanded for a new trial.

FROMME, J., not participating.