No. 51,205

STATE OF KANSAS, *Appellee,* v. JOHN A. PURDY, *Appellant.*

(615 P.2d 131)

Opinion filed July 18, 1980.

*Charles A. O'Hara,* of O'Hara, Busch, Johnson & Falk, of Wichita, argued the cause and was on the brief for the appellant.

*Paul Clark,* assistant district attorney, argued the cause and *Robert T. Stephan,* attorney general, *Vern Miller,* district attorney, and *Michael Barbara,* assistant district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

HERD, J.: John Purdy, 16 years of age at the time of the offenses, was convicted by a jury in Sedgwick County of first degree murder (K.S.A. 21-3401), aggravated burglary (K.S.A. 21-3716),

and two counts of aggravated robbery (K.S.A. 21-3427). He was sentenced to life imprisonment for murder, ten years to life for aggravated robbery count 1, fifteen years to life for aggravated robbery count 2, and five to twenty years for aggravated burglary. Purdy was tried with codefendant Kenneth Hutchison but each appealed separately. See *State v. Hutchison*, 228 Kan. 279, 615 P.2d 138 (1980).

The charges which led to Purdy's conviction arose from the armed robbery and burglary of the home of Robert Eugene Humphrey on West Kellogg in Wichita, in the late evening of September 1, 1977. Prior to the crime, John Purdy was riding around drinking beer with Hutchison, Jack Jefferies and Jessica Finn in a pickup truck belonging to Jefferies' father. Jessica advised the others she had knowledge of a large amount of cash in Humphrey's home, and the four drove to the house with the appropriation of that money in mind.

Upon arrival at Humphrey's home, Hutchison cut open the screen door with his buck knife, opened the latch and Purdy kicked the door open. Purdy and Hutchison then entered the house. Purdy was armed with a .44 magnum pistol and Hutchison with a .357 handgun.

Robert Humphrey and his financee, Nadine Schoenhoff, had just retired for the night. At approximately midnight, Nadine heard a banging sound from the kitchen. Humphrey grabbed the gun which he kept at the head of his bed, and cocked it. He crawled through the bedroom door on his hands and knees toward the kitchen. Purdy saw him crawl around the side of a desk and fired the .44 magnum revolver at Humphrey's back and into his chest. When Humphrey raised to his knees Purdy shot him again, killing him. Purdy reached down and removed Humphrey's wallet. Purdy and Hutchison then went into the bedroom where Nadine was screaming hysterically. They demanded the location of the money and she replied there was none. Purdy ordered her to lie down on the floor and to keep her eyes closed. He kicked her in the face, grabbed her purse and both men fled to the pickup. They got into the pickup and drove to a home on Hiram Street where John Purdy sometimes stayed, and deposited the guns. All of the parties, except Jefferies, drove to South Broadway and checked into a motel. There they searched the stolen billfold and purse, taking what valuables were present.

The billfold and purse were later burned in an alley near the motel.

On September 13, 1977, Kenneth Hutchison was arrested for failure to appear pursuant to a juvenile court order. At that time he indicated to the police he had some knowledge of the Humphrey homicide and implicated John Purdy. The police kept him throughout the day until 2:00 a.m. on September 14th to talk with him and search for Purdy. The police released Hutchison and picked him up at 9:30 the next morning to continue the search for Purdy, who was later located and arrested. At 5:25 p.m. on September 16, 1977, Hutchison was given a *Miranda* warning at which time he signed a waiver of his rights and gave a statement to the police. The statement was ruled voluntary by both the juvenile court and the trial court.

John Purdy also gave a statement to the police on September 16, 1977. Purdy admits he advised the police he waived his *Miranda* rights but claims he didn't understand the meaning of his waiver and states he requested an attorney and permission to talk to his stepmother. The court also refused to suppress Purdy's statement and both statements were introduced in evidence at the joint trial. Neither defendant took the stand. Each statement was excised to prevent reference to the other defendant pursuant to the *Bruton* rule on confrontation. The effect of the excision is the principal point on this appeal. Both defendants were convicted. This appeal is that of John Purdy.

Purdy's first issue concerns the introduction into evidence of excised versions of his own statement and that of Hutchison. For proper consideration of this issue it is important to fully understand how the trial court handled the statements made by Purdy and Hutchison. In Hutchison's statement the court with the assistance of the attorneys carefully deleted all references to Purdy. Officer Sproul's testimony laid a foundation for admission of the excised statement by testifying to the time, place and circumstances of the statement. He identified the original typed transcript which was introduced into evidence but was not shown to the jury. Hutchison was not permitted to cross-examine Sproul on the portions of the statement referring to Purdy. The court then ordered the unexcised portion of Hutchison's statement read into evidence to the jury.

The events surrounding Purdy's statement are as follows: After finding Purdy's statement was voluntarily made, the court, with the assistance of the attorneys, deleted the portions of Purdy's statement which referred to Hutchison. The entire statement was introduced into evidence upon the foundation laid by Policeman Ray Davis and Patrolman Jim Bogle, but was not shown to the jury. The excised statement was read to the jury by two court reporters, the same procedure used with Hutchison's statement. The trial court gave the following limiting instruction:

"You should give separate consideration to each defendant. Each is entitled to have his case decided on the evidence and the law which is applicable to him.

"The statement made by defendant John Purdy can only be considered as evidence against John Purdy.

"The statement made by defendant Kenneth Hutchison can only be considered as evidence against Kenneth Hutchison."

Purdy argues excising the statements changed the meaning to such extent the admission was improper and could not be cured by the limiting instruction. Let us examine the precedent.

*Bruton v. United States,* 391 U.S. 123, 20 L.Ed.2d 476, 88 S.Ct. 1620 (1968) held, in the words of this court in *State v. Rodriquez,* 226 Kan. 558, 561, 601 P.2d 686 (1979):

"[A] defendant is deprived of his rights under the confrontation clause of the Sixth Amendment to the United States Constitution where the extrajudicial statement of a non-testifying codefendant inculpating the defendant is admitted and where the codefendant is not available for cross-examination, although an instruction is given limiting the use of the confession to the codefendant."

The extrajudicial statement of the non-testifying codefendant must pose a substantial threat to the complaining defendant's case.

*Bruton* was applied retroactively in *Roberts v. Russell,* 392 U.S. 293, 20 L.Ed.2d 1100, 88 S.Ct. 1921 (1968). Some of the more recent Kansas cases applying *Bruton* are: *State v. Rodriquez,* 226 Kan. 558; *State v. White & Stewart,* 225 Kan. 87, 587 P.2d 1259 (1978); *State v. McQueen & Hardyway,* 224 Kan. 420, 582 P.2d 251 (1978); *State v. Edwards,* 224 Kan. 266, 579 P.2d 1209 (1978); *State v. Sullivan & Sullivan,* 224 Kan. 110, 578 P.2d 1108 (1978); *State v. Mims,* 220 Kan. 726, 556 P.2d 387 (1976).

An important exception to *Bruton* emerged in *Harrington v. California,* 395 U.S. 250, 23 L.Ed.2d 284, 89 S.Ct. 1726 (1969). In

that case the United States Supreme Court held that although the trial court erred in admitting the codefendant's confessions, the error was harmless because the confessions were merely cumulative in light of the overwhelming evidence against the defendant. In *Brown v. United States,* 411 U.S. 223, 231, 36 L.Ed.2d 208, 93 S.Ct. 1565 (1973), the Supreme Court rejected the notion that "a *Bruton* error can never be harmless," and applied the rule set forth in *Harrington.*

With this background information regarding the impact of *Bruton* in hand, we proceed to the special circumstances of this case. The process of editing a defendant's statement or confession to excise or delete incriminating references to a codefendant is known as redaction. There are no Kansas cases post-*Bruton* dealing with this procedure but the process has undergone extensive review in numerous federal and state jurisdictions. In *Bruton,* the United States Supreme Court recognized the use of redaction in various jurisdictions, without specific approval or disapproval. *Bruton v. United States,* 391 U.S. at 134.

The following federal and state cases illustrate recent holdings regarding the use of redacted statements in trials of joint codefendants.

(1) Redaction is proper "if there is no 'substantial threat' to an accused's right of confrontation and cross-examination of witnesses." *United States v. Hernandez,* 608 F.2d 741, 749 (9th Cir. 1979). The statement admitted into evidence in *Hernandez* eliminated any suggestion of codefendant's involvement in the crime charged.

(2) The witness presenting the redacted statement cannot pointedly reveal to the jury that the statement is in excised form. *United States v. Danzey,* 594 F.2d 905 (2nd Cir. 1979).

(3) Redacted statements are allowed if the excused versions do not "explicitly suggest the participation of a complaining defendant." *United States v. Belle,* 593 F.2d 487, 493 (3rd Cir. 1979). The court in *Belle* also enunciated the view that the statement alone must inculpate the non-testifying codefendant, not the effect of the statement coupled with other incriminating evidence.

(4) Although the redacted statement referred to "other persons," the 2nd Circuit Court of Appeals applied the following rule: "[T]he admission of the statements of a non-testifying

codefendant [is] a violation of the defendant's Sixth Amendment right of confrontation if they are both clearly inculpatory as to the defendant and vitally important to the Government's case against the defendant, cautionary instructions notwithstanding." *United States v. Knuckles,* 581 F.2d 305, 313 (2nd Cir. 1978). The complaining defendant in *Knuckles* was not named, therefore the court found the admission was not clearly inculpatory. In addition, there was a great deal of evidence independent of the statement implicating the defendant.

(5)   There was no error in admitting a redacted statement indicating the confessing defendant had been assisted by two other men. The statement referred to "male individuals." *United States v. Holleman,* 575 F.2d 139 (7th Cir. 1978). See also *United States v. English,* 501 F.2d 1254 (7th Cir. 1974), where a confession was approved in which it was made known that two other people were involved without identifying or describing them.

(6)   The statement may be admitted if not clearly inculpatory as to the complaining codefendant and not vitally important to the government's case. *United States v. Wingate,* 520 F.2d 309 (2nd Cir. 1975).

(7)   Redacted statements were allowed pursuant to the court's interpretation of Federal Rule of Criminal Procedure 14 in *Bailey v. United States,* 410 F.2d 1209 (10th Cir. 1969).

(8)   The defendant's rights were violated where the "jury is highly likely to infer that the defendant is a nameless individual incriminated by the statement." *State v. Williams,* 27 Ariz. App. 279, 287, 554 P.2d 646 (1976).

(9)   The admission of a redacted statement which did not mention the complaining defendant was proper pursuant to North Carolina statute G.S. 15A-927(c)(1)(b). *State v. Braxton,* 294 N.C. 446, 242 S.E.2d 769 (1978).

(10)  The admission of a redacted statement was improper because the statement, while excluding names, implied that the complaining defendant who was admittedly present during the crime inflicted the more serious blows to the victim. *Mathews v. State,* 353 So. 2d 1274 (Fla. App. 1978).

(11)  The admission of redacted statements constituted a *Bruton* violation, but the error was harmless in the light of the overwhelming independent evidence against the complaining defendants. Note the Florida court's discussion of the inconsistent

rationale in *State v. Williams* and *United States v. Wingate,* regarding whether a redacted statement is to be judged alone or in conjunction with other evidence presented at trial. *Cook v. State,* 353 So. 2d 911 (Fla. App. 1977).

Redaction of a codefendant's statement is also the subject of an extensive annotation, Confrontation Clause - Bruton Rule, 29 L.Ed.2d 931, 991. The collection of cases generally falls in one of three catagories: (1) no error in admitting the statement; (2) error, but harmless in light of either the impact of the statement itself or in light of the overwhelming evidence against the defendant; (3) reversible error.

Applying the law gleaned from the foregoing authorities, it is clear the introduction of Hutchison's and Purdy's redacted statements was not error pursuant to *Bruton.* We do not agree with Purdy's objection that the meaning of his own statement was substantially changed by the process of redaction. We have been furnished with copies of both the original statements and the redacted versions in the record on appeal. Those statements have been examined and compared and the meaning is not distorted. This case is similar to the facts and circumstances present in *United States v. Kershner,* 432 F.2d 1066 (5th Cir. 1970). In that case, each defendant's confession implicated the codefendant and redacted versions of each confession were, therefore, introduced into evidence. Defendants alleged on appeal that they were entitled to have the entire confessions introduced into evidence, rather than selected portions. Defendant Smith alleged the trial court erred in admitting a "highly concentrated and out-of-context synopsis, which was not fairly representative of what he had said." *United States v. Kershner,* 432 F.2d at 1069. The court held that unless the redaction procedure "distorts a confession, it may be used because it does not violate any constitutional right of the defendant to be confronted with the witnesses against him." *Kershner* at 1071. As in the case at bar, the court in *Kershner* had copies of the full, written confessions made by each defendant as well as the redacted versions. They were able to review the excision procedure and found no distortions of meaning. The procedure was approved and the convictions affirmed.

In addition, we do not agree that the introduction into evidence of the redacted version of codefendant Hutchison's statement constituted error pursuant to *Bruton.* Hutchison's statement does

not mention Purdy, nor does it state anything that might refer to him. The jury was not made aware that the statements had been redacted. The trial court gave an instruction to the jury limiting the use of each confession to the defendant who gave it, and the jury's verdict indicated that instruction was followed. Finally, the case presents a special set of circumstances not found in most of the foregoing cited authorities. Allegations of a *Bruton* violation arise more often where one defendant confesses and, in the process, implicates his codefendant, who has not confessed. Here, as in *Kershner,* both defendants gave statements to police. We have examined those statements in their original and redacted form and find they are almost identical. The recitation of events and persons present on the night in question is the same in each statement, making them interlocking confessions. Additionally, while Nadine Schoenhoff could not identify the men who broke into the house the night of the murder, her testimony directly corresponds with the statements of Purdy and Hutchison as to the sequence of events which occurred that night. The redaction process did not distort the meaning of Purdy's statement, and we hold the introduction into evidence of the redacted version of Hutchison's statement did not constitute a violation of *Bruton.*

Appellant's next point challenges the jurisdiction of the district court, alleging he should have been tried pursuant to juvenile court jurisdiction. This issue was previously tried and affirmed on appeal to the Court of Appeals and it will not be re-examined in this appeal. *In re Purdy,* (unpublished opinion) 3 Kan. App. 2d xiii (1979). See *State v. Hutchison,* 228 Kan. at 285. The point is without merit.

Purdy next argues the trial court erred in preventing defense counsel from cross-examining the court reporters who read the redacted statements into evidence. The court reporters had no knowledge or information about the statements; their duty was merely to mechanically read the material furnished to them. Appellant cross-examined the officers who laid the foundation for the reading of the statements. Cross-examination of the court reporters regarding their knowledge of the statements would have proved fruitless. The scope of cross-examination lies within the discretion of the trial court (*Timsah v. General Motors Corp.,* 225 Kan. 305, 591 P.2d 154 [1979]; *State v. Nixon,* 223 Kan. 788, 576 P.2d 644 [1978]; *State v. Hutchison,* 222 Kan. 365, 564 P.2d 545

[1977]; *State v. Woods,* 218 Kan. 163, 542 P.2d 319 [1975]), and we find no abuse of discretion.

Appellant next contends the trial court should have given instructions on the lesser included offenses within first degree murder and on self-defense. K.S.A. 21-3107(3) states:

"In cases where the crime charged may include some lesser crime it is the duty of the trial court to instruct the jury, not only as to the crime charged but as to all lesser crimes of which the accused might be found guilty under the information or indictment and upon the evidence adduced even though such instructions have not been requested or have been objected to."

This court stated in *State v. Prince,* 227 Kan. 137, 140, 605 P.2d 563 (1980):

"The court is required to instruct on a lesser included crime only when there is evidence under which a defendant might have reasonably been convicted of the lesser crime. [Citation omitted.] The test for the giving of a lesser included instruction is not whether any theory arises under which a person could be found guilty or innocent, but whether there is sufficient evidence to support the giving of an instruction on the lesser charge."

In *State v. Sullivan & Sullivan,* 224 Kan. 110, this court was faced with a similar allegation. The rule regarding instructions of lesser degrees of murder was taken from *State v. Rueckert,* 221 Kan. 727, 731, 561 P.2d 850 (1977), as follows:

"Normally, a trial court is required to give a full range of lesser included offense instructions; however, when a murder is committed during the commission of a felony the rule requiring instructions on lesser included offenses does not apply. [Citations omitted.] If a murder is committed during the perpetration of a felony, the felonious conduct is held tantamount to the elements of deliberation and premeditation which are otherwise required for first degree murder."

See also *State v. Reed,* 214 Kan. 562, 564, 520 P.2d 1314 (1974).

In *Sullivan & Sullivan* we applied the exception to that rule which requires instructions on lesser degrees of murder when the evidence of the underlying felony is weak or inconclusive. In this case, however, the evidence of an underlying felony is conclusive. The defendants were, by their own admission, inside the house in the process of committing a burglary when the homicide occurred. Applying the rule set forth in *Sullivan & Sullivan,* it is clear the trial court did not err in refusing to give instructions on lesser degrees of first degree murder.

The defendant contends an instruction on self-defense should have been given the jury. The justifiable use of force is statutorily authorized by K.S.A. 21-3211 through -3214. K.S.A. 21-3211

allows the use of force against an aggressor in defense of a person. K.S.A. 21-3214(1), however, does not allow the use of such force by a person who: "[i]s attempting to commit, committing, or escaping from the commission of a forcible felony." The defense of self-defense is not available to the defendant in this case because he committed a forcible felony. See *State v. Marks,* 226 Kan. 704, 712, 602 P.2d 1344 (1979). See generally *State v. Booker,* 200 Kan. 166, 434 P.2d 801 (1967), *cert. denied* 391 U.S. 965 (1968); *State v. Pfeifer,* 143 Kan. 536, 56 P.2d 442 (1936); *State v. Schroeder,* 103 Kan. 770, 176 Pac. 659 (1918); 40 Am. Jur. 2d, Homicide §§ 140-143, 145, pp. 430-434.

Purdy argues the trial court erred in refusing to suppress his confession. He claims he requested an attorney and that request was ignored, although he admits he stated to the police he understood the *Miranda* warning and expressly waived his rights thereunder. John Purdy was 16 years of age when he committed this offense. In *Jackson v. Denno,* 378 U.S. 368, 12 L.Ed.2d 908, 84 S.Ct. 1774 (1964), the United States Supreme Court ruled that a proper determination of the voluntariness of a confession must be made prior to its admission into evidence. In this case a hearing was held and the trial court determined the confession was voluntary. Does the defendant's age affect that determination? In *State v. Cross,* 223 Kan. 803, 806, 576 P.2d 698 (1978), we stated:

"A confession is not inadmissible merely because the person making it is a juvenile. [Citations omitted.] This court has also said that a determination of whether a confession of a juvenile was freely and voluntarily given is to be based upon a consideration of the totality of the circumstances. [Citation omitted.]

" '. . . The age of the juvenile, the length of the questioning, the juvenile's education, the juvenile's prior experience with the police, and the juvenile's mental state are all factors to be considered in determining the voluntariness and admissibility of a juvenile's confession into evidence.' *State v. Young,* 220 Kan. 541, Syl. ¶ 2, 552 P.2d 905 (1976).

"Confessions or admissions voluntarily made are not inadmissible because made at a time when the accused in a criminal action did not have counsel."

See *In re Edwards,* 227 Kan. 723, 608 P.2d 1006 (1980); *State v. Young,* 220 Kan. 541, 552 P.2d 905 (1976). The record indicates the court applied the proper test to the facts in this case and was justified in finding the confession voluntary.

Finally, defendant argues the court erred in sentencing him under the firearm statute, K.S.A. 1978 Supp. 21-4618, because the

law was amended to exclude minors from its provisions, effective July 1, 1979. The mandatory sentencing provisions were applicable to this defendant at the time the offenses were committed and defendant was sentenced on May 11, 1979. Defendant contends had he been sentenced after July 1, 1979, the mandatory firearms statute would not have applied. He argues the new provision should be retroactively applied. This argument is extensively discussed in *State v. Hutchison,* 228 Kan. at 287, wherein we hold retroactive application of the amendment would violate the statute's terms. We find no merit to this issue.

The judgment of the trial court is affirmed.