(126 P.3d 426)
No. 93,645

STATE OF KANSAS, *Appellee*, v. JESUS MARINO, *Appellant*.

Opinion filed January 13, 2006.

*Rick Kittel*, assistant appellate defender, for appellant.

*Douglas W. McNett*, of Larned, *John Sauer*, county attorney, and *Phill Kline*, attorney general, for appellee.

Before GREEN, P.J., LARSON, S.J., and WAHL, S.J.

GREEN, J.: Jesus Marino was convicted of one count of aggravated battery and one count of conspiracy to commit aggravated battery. On appeal, the defendant contends that his conviction for conspiracy to commit aggravated battery should be reversed because the State failed to allege a specific overt act in the complaint. The defendant maintains that there can be no crime of conspiracy

unless an overt act is alleged and proved. We agree and reverse his conspiracy conviction on this issue.

The defendant further contends that the trial court abused its discretion when it admitted a codefendant's journal entry showing that the codefendant had pled guilty to the charge of conspiracy to commit aggravated battery. We agree but determine that this error was harmless. In addition, the defendant asserts that the trial court should have instructed the jury on misdemeanor battery as a lesser included offense of aggravated battery. We disagree and affirm. Finally, the defendant maintains that the trial court improperly admitted evidence of the defendant's previous bad acts. Because the defendant failed to make a timely objection to this evidence, we affirm.

Jose Coney was working as a security officer at Latino's Disco (the bar) in Dodge City, Kansas. At approximately midnight, Jesus Marino and Mario Marino, Jesus' cousin, attempted to enter the bar. Coney recognized Jesus from previous incidents when Jesus had been asked to leave. Because of these previous incidents, Jesus had been banned from the bar. After recognizing Jesus, Coney told him that he could not enter the bar. Although Jesus walked away, he returned and attempted to punch Coney. Coney blocked the punch and punched Jesus in the face. Jesus fell and then left with Mario.

Coney left the bar around 2 a.m. and went to the Sundance Apartments to check on a coworker. After arriving at the apartment parking lot, Coney removed his gun belt and placed it in the trunk of his car. Coney saw a white Grand Prix pull up behind him. Mario was driving the car, and Jesus was sitting in the passenger seat. Mario and Jesus were both carrying lead pipes when they got out of the car. Coney tried to retrieve his gun belt from the closed car trunk. Coney testified that Mario and Jesus were swinging the pipes at him. Mario struck Coney on the back of his head, and Jesus hit Coney on the wrist before Coney could retrieve his gun belt from the trunk. Coney was finally able to retrieve his gun belt.

Coney then ran towards a playground area. While running, he tried to remove his gun from its holster. When Coney got his gun released from its holster, he turned around. Coney saw Jesus com-

ing towards him with his pipe raised. Mario then struck Coney on the back of the head. Coney fell forward and accidentally fired his gun. The bullet hit Jesus in the chest, and he fell to the ground. Mario helped Jesus up, and they ran from the scene.

The State charged Jesus with one count of aggravated battery and one count of conspiracy to commit aggravated battery. During Jesus' preliminary hearing, the State called Mario as a witness. Before testifying, Mario invoked his Fifth Amendment right against self-incrimination under the United States Constitution and refused to testify.

Mario later pled guilty to one count of conspiracy to commit aggravated battery. After receiving a suspended sentence and probation, Mario was deported to Mexico. The State moved to admit Mario's confession to the police. The trial court denied the State's motion. The State later requested that the court take judicial notice of Mario's criminal case file and sought admission of a redacted copy of a journal entry of Mario's conviction for conspiracy to commit aggravated battery. The trial court took judicial notice of Mario's criminal case and stated that it would admit the journal entry into evidence if the State laid a proper foundation.

*Complaint*

Jesus maintains that his conviction for conspiracy to commit aggravated battery should be reversed because the complaint was fatally defective. In *State v. Shirley*, 277 Kan. 659, 661, 89 P.3d 649 (2004), the court stated: "The sufficiency of a charging document to confer jurisdiction is a question of law over which an appellate court has unlimited review. [Citation omitted.] However, the test used for evaluating the sufficiency of the charging document depends on when the issue is first raised. [Citation omitted.]" If a defendant timely moves to arrest judgment in the district court, an appellate court will examine whether the charging document sets out the essential elements of the crime. If the charging document fails to set out the essential elements of the crime, it is fatally defective and the district court lacks jurisdiction to convict the defendant of the crime. 277 Kan. at 661-62.

In the present case, there is no dispute that the complaint contains a major flaw. In charging Jesus with conspiracy to commit aggravated battery, the complaint stated:

"That on or about the 12th day of January, 2002, the above named Defendant, within the above named County in the State of Kansas, then and there being, did then and there contrary to the statutes of the State of Kansas unlawfully, and willfully agree with another person to commit a crime or to assist in committing a crime, to wit: **Aggravated Battery,** and an overt act in furtherance of the conspiracy was committed by such person or by a co-conspirator. **CONSPIRACY TO COMMIT AGGRAVATED BATTERY** is a severity level 6 person felony in violation of K.S.A. 21-3414 and 21-3302."

The problem with the complaint is that it fails to set forth a specific overt act in the furtherance of the conspiracy. This type of failure was addressed in *State v. Crockett*, 26 Kan. App. 2d 202, 987 P.2d 1101 (1999), and *State v. Sweat*, 30 Kan. App. 2d 756, 48 P.3d 8, *rev. denied* 274 Kan. 1118 (2002).

In *Crockett*, the defendant was convicted of conspiracy to commit first-degree murder. The complaint alleged that the defendant and codefendant entered into an agreement to commit first-degree murder. The only overt acts alleged in the complaint were planning the time, the location, and the manner of the killing. The court found that because the complaint failed to sufficiently allege an overt act, the defendant's conviction had to be reversed. 26 Kan. App. 2d at 204-05.

In *Sweat*, the defendant was convicted among other crimes of conspiracy to commit first-degree murder. The charge in the complaint covering the conspiracy charge alleged the defendant agreed with another person " 'to commit the crime or to assist in committing the crime of Murder in the First Degree, to-wit: intentionally and with premeditation kill Lloyd Eddens, in an overt act, and further such conspiracy was committed by such person or said co-conspirator.' " 30 Kan. App. 2d at 759. On appeal, after discussing the *Crockett* decision, the *Sweat* court stated:

"The flaw in the complaint in this case is even more obvious than the flaw in Crockett's information. Sweat's complaint does not even attempt to allege any specific overt act committed in furtherance of the conspiracy. It is not sufficient to say merely that the defendant willfully agreed with another person to commit the crime or to assist in committing the crime. Her conspiracy conviction must

therefore be reversed; the district court lacked jurisdiction to try her on that charge." 30 Kan. App. 2d at 761.

*Sweat* leaves no doubt that the failure to allege a specific overt act in a complaint of conspiracy is fatal to the complaint.

Nevertheless, the defendants in *Crockett* and *Sweat* both moved to arrest judgment in the district court. In the present case, Jesus neglected to move to arrest judgment in the district court. In *Shirley*, the court discussed *State v. Hall,* 246 Kan. 728, 764-65, 793 P.2d 737 (1990), *overruled in part on other grounds Ferguson v. State,* 276 Kan. 428, 78 P.3d 40 (2003), which set forth a new standard of review when a defendant challenges the complaint for the first time on appeal. See 277 Kan. at 661-62. Restating the *Hall* standard of review when the charging document is challenged for the first time on appeal, the *Shirley* court stated:

"[T]he defendant must show that the claimed defect (1) prejudiced the defendant's preparation of a defense, (2) impaired the defendant's ability to plead the conviction in any subsequent prosecution, or (3) limited the defendant's substantial rights to a fair trial under the Sixth Amendment to the United States Constitution or Section 10 of the Kansas Constitution Bill of Rights. [Citation omitted.]" 277 Kan. at 662.

Generally, if a defendant fails to move to arrest judgment at the district court, the defendant must establish one of the *Hall* factors to prevail on a claim of a defective complaint on appeal.

Jesus, however, maintains that K.S.A. 21-3302(a), the statute governing conspiracy, dictates the outcome when the State fails to allege an overt act. This statute states:

"A conspiracy is an agreement with another person to commit a crime or to assist in committing a crime. No person may be convicted of a conspiracy unless an overt act in furtherance of such conspiracy is *alleged and proved* to have been committed by such person or by a co-conspirator." (Emphasis added.) K.S.A. 21-3302(a).

Jesus asserts that because the State did not allege an overt act in the complaint, his conviction of conspiracy was improper. Jesus' argument has merit. The question requires this court to interpret K.S.A. 21-3302(a). In *State v. Cox,* 258 Kan. 557, Syl. ¶ 7, 908 P.2d 603 (1995), the court stated:

"Interpretation of a statute is a question of law. Under the fundamental rule of statutory construction, the intent of the legislature governs when that intent can be ascertained from the statute. When a statute is plain and unambiguous, an appellate court must give effect to the intention of the legislature, rather than determine what the law should or should not be. The general rule is that a criminal statute must be strictly construed in favor of the accused, which simply means that words are given their ordinary meaning. Any reasonable doubt about the meaning is decided in favor of anyone subjected to the criminal statute. This rule of strict construction, however, is subordinate to the rule that judicial interpretation must be reasonable and sensible to effect legislative design and intent."

K.S.A. 21-3302(a) is unique in that it is the only criminal statute that requires a specific allegation of the elements of the crime. *Shirley*, 277 Kan. at 665. K.S.A. 21-3302(a) states that no crime of conspiracy exists unless there is an overt act alleged and proved. This means that an overt act is an essential element of the crime of conspiracy. Therefore, an allegation of conspiracy is fatally defective unless an overt act is charged.

This concept is demonstrated by the court's reasoning in *Shirley*. *Shirley*, like *Crockett* and *Sweat*, is distinguishable from this case because the defendant had moved to arrest judgment in the district court. Therefore, the court used the pre-*Hall* standard in reviewing the complaint. Nevertheless, *Shirley* is instructive.

In *Shirley*, the complaint stated that the defendant committed "an overt act in furtherance of the conspiracy." 277 Kan. at 665. After the court found the complaint to be fatally defective, the court examined whether the jury instruction setting forth the elements of the conspiracy charge was proper. In setting forth the overt act requirement, the jury instruction stated: " 'That the defendant or *any party to the agreement* acted in furtherance of the agreement by an overt act.' " 277 Kan. at 666. In discussing whether this jury instruction was proper, the court stated:

"K.S.A. 21-3302(a) requires that an overt act in furtherance of the conspiracy be alleged and proved. Because the statutory language joins allegation and proof with the conjunction 'and,' both the factual allegation in the charging document and the proof of the same factual allegation are required for a conviction. Thus, to find a defendant guilty, the jury must find that the defendant or a coconspirator committed the overt act that was alleged in the charging document. The charging document must specify both the act and the actor." 277 Kan. at 667.

Because the charging document alleged that the defendant had committed the overt act, the *Shirley* court determined that the jury instruction was improper. The instruction wrongly allowed the jury to determine that someone other than the defendant had committed the overt act. 277 Kan. at 667. The *Shirley* court concluded that under K.S.A. 21-3302(a), the State was required to prove, in accordance with the allegation of the complaint, that the defendant had committed an overt act; however, the jury instruction constructively amended or broadened the complaint by instructing the jury in the disjunctive. 277 Kan. at 667.

The *Shirley* analysis is applicable to this case. *Shirley* explains that if the State is required to allege an essential element in the charging document, the essential element should not be constructively amended or broadened by a later jury instruction. A broadening of the charging document occurred in the present case.

Here, the complaint stated that an overt act was committed by either Jesus or a coconspirator. The State concedes that no overt act was alleged in the complaint. The overt acts were later furnished in a jury instruction. Thus, the trial court broadened or constructively amended the complaint by setting forth the overt acts in the jury instruction. This allowed the jury to convict the defendant of an offense different from the offense alleged in the complaint or the indictment. The *Shirley* court warned that this could occur when a complaint fails to allege specific facts of an overt act in furtherance of a conspiracy. 277 Kan. at 665-67.

The State argues, however, that "despite multiple opportunities to do so, the defendant never objected to the language in question. Accordingly, this case must be analyzed under the factors set forth in *State v. Hall* . . . ." We disagree. This case primarily involves a sufficiency of the evidence question. Moreover, Jesus, in his brief, essentially challenges the sufficiency of the evidence to convict him:

"[A] defendant who has been convicted of conspiracy need not resort to the remedy of a motion to arrest judgment to challenge a complaint that failed to properly allege an overt act in furtherance of the conspiracy. Instead, that defendant may rely upon the conspiracy statute itself which, by its plain language, prohibits conviction of conspiracy unless a specific overt act is alleged."

K.S.A. 21-3302(a) states that "[n]o person may be convicted of a conspiracy unless an overt act . . . is alleged and proved." " 'When the sufficiency of evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt.' [Citation omitted.]" *State v. Calvin*, 279 Kan. 193, 198, 105 P.3d 710 (2005).

Here, the State failed to allege a specific overt act in the conspiracy complaint. Moreover, the State never moved to amend the complaint to allege a specific overt act. If we were to pass upon the sufficiency of the evidence based on the record, tested by the language in the complaint, the record reflects that no overt act was alleged and proved. There was a failure of proof. Simply stated, based upon the complaint, the State failed to prove that an overt act had been committed in the furtherance of the conspiracy. As a result, the *Hall* factors are inapplicable to this case.

We determine, given the language of K.S.A. 21-3302(a) as passed by the legislature, it was clearly the intent of the legislature that in order to obtain a conviction under K.S.A. 21-3302(a), the statute requires the State to allege in the complaint or the indictment and to prove at trial that an overt act in furtherance of the conspiracy has been committed. Because the State failed to allege and to prove an overt act, we determine that the evidence was insufficient for a rational factfinder to conclude that Jesus was guilty beyond a reasonable doubt of conspiracy to commit aggravated battery. As a result, we reverse Jesus' conspiracy conviction.

*Hall Analysis*

Even if the *Hall* standard of review would be applied to this case, we determine that one or more of the *Hall* factors are satisfied. Under the *Hall* standard of review, a "defendant must show that the claimed defect (1) prejudiced the defendant's preparation of a defense, (2) impaired the defendant's ability to plead the conviction in any subsequent prosecution, or (3) limited the defendant's substantial rights to a fair trial under the Sixth Amendment to the United States Constitution or Section 10 of the Kansas Con-

stitution Bill of Rights. [Citation omitted.]" *Shirley*, 277 Kan. at 662.

As stated previously, the State was required to allege and to prove some overt act done in the furtherance of the conspiracy. Having previously determined that an overt act is an essential element of the crime of conspiracy, we must consider the purpose of requiring that an overt act be alleged.

It is apparent that the legislature believed that something more than a mere agreement must exist to effect a conspiracy. In stating that the overt act requirement was mandated by statute to allow conspirators to change their mind about a conspiracy agreement, the United States Supreme Court in *United States v. Britton,* 108 U.S. 199, 204-05, 27 L. Ed. 2d 698, 2 S. Ct. 531 (1883), stated:

> "The provision of the [conspiracy] statute, that there must be an act done to effect the object of the conspiracy, merely affords a *locus poenitentiae,* so that before the act [is] done either one or all of the parties may abandon their design, and thus avoid the penalty prescribed by the statute."

If conspirators are informed of the alleged act, they might say that although they did agree, they later called it off before the act was completed.

Because an overt act is an essential element of a conspiracy, a conspirator has the right to be informed of the overt act. See K.S.A. 2004 Supp. 22-3201(b). In stating the purpose of requiring a recitation of the essential facts, the *Shirley* court stated: "The purpose for requiring a recitation of the essential facts is to ensure that the accused is informed of the charges against him or her so that he or she may prepare a defense. [Citation omitted.]" 277 Kan. at 665. See U.S. Const. Amend. VI (A defendant has the right to be informed of the nature and cause of the accusation.). When the State fails to allege with particularity an overt act in the complaint or the indictment, a defendant might be taken by surprise and not be able to adequately defend against an essential element of the alleged crime. This lack of notice would deprive the defendant of due process of law. See *Smith v. O'Grady,* 312 U.S. 329, 334, 85 L. Ed. 859, 61 S. Ct. 572 (1941) (Due process requires a state defendant to be told of the nature and cause of the accusation, for

without that information the fair trial demanded by due process is denied.).

Here, the trial court fashioned the overt act language to be inserted into the jury instruction stating the elements of conspiracy. The trial court placed in the jury instruction the phrase "following the victim to Sundance Apartments and attacking the victim with pipes." No such language was mentioned in the conspiracy charge. Jesus would not have known before trial or during the taking of evidence, the specific overt act that was alleged to have been committed. The failure to allege a specific overt act in the complaint deprived Jesus of the notice to which he was entitled. Notice of the specific crime charged is one of those constitutional rights enjoyed by all defendants, whether they are in a state or a federal court. See *Cole v. Arkansas,* 333 U.S. 196, 201, 92 L. Ed. 644, 68 S. Ct. 514 (1948). Here, the State violated Jesus' right to notice of the specific crime charged when it failed to allege a specific overt act in furtherance of the conspiracy in the complaint. This violation of Jesus' right to notice of the specific crime charged contravened both the Sixth Amendment and the Fourteenth Amendment Due Process Clause to the United States Constitution.

Finally, because no overt act was ever alleged in the complaint, the State never had to prove beyond a reasonable doubt that an alleged overt act was done in the furtherance of the conspiracy. To find a defendant guilty of conspiracy, K.S.A. 21-3302(a) requires proof of the commission of the overt act *alleged* in the complaint or the indictment. See *Shirley,* 277 Kan. at 667. Because the State failed to allege an overt act in its complaint, it would be an impossibility for the State to prove an overt act for which it never alleged. Clearly, it would be improper to convict Jesus of a charge that was never proved. As a result, Jesus was denied a fair trial even under a *Hall* standard of review.

*Mario's Journal Entry*

Next, Jesus maintains that his Sixth Amendment right to confront witnesses was violated when the district court admitted a redacted copy of a journal entry showing that Mario Marino had pled guilty to one count of conspiracy to commit aggravated bat-

tery. In *State v. Holmes*, 278 Kan. 603, 623, 102 P.3d 406 (2004), the court stated:

" 'The admission of evidence lies within the sound discretion of the trial court. [Citation omitted.] An appellate court's standard of review regarding a trial court's admission of evidence, subject to exclusionary rules, is abuse of discretion. Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. One who asserts that the court abused its discretion bears the burden of showing such abuse of discretion.' [Citations omitted.]"

Nevertheless, in *Saucedo v. Winger*, 252 Kan. 718, 731-32, 850 P.2d 908 (1993), the court stated:

"If a constitutional or a statutory right has been violated, the trial judge's use of discretion is limited. Under these circumstances there is a greater need for articulation by the trial judge of the reasons for his 'discretionary' decision. Discretion must be exercised, not in opposition to, but in accordance with, established principles of law. It is not an arbitrary power. In its practical application in this state, judicial discretion is substantially synonymous with judicial power."

See also *State v. Garza*, 26 Kan. App. 2d 426, 429, 991 P.2d 905, *rev. denied* 267 Kan. 891 (1999) (applying this standard in a criminal setting).

During trial, the State sought to admit a redacted copy of a journal entry of judgment in Mario's criminal trial. The journal entry showed that Mario had pled guilty to one count of conspiracy to commit aggravated battery. The journal entry was redacted so as to remove any information regarding the sentence Mario received or the presumptive sentences for the crime. Jesus' name was not set forth anywhere in the journal entry.

When the State requested to admit the journal entry, defense counsel objected on the grounds of relevance and prejudice: "I mean, he's claiming that simply because someone else decided to plead to a conspiracy it should be used against my client as a conspiracy." The State claimed that it was offering the journal entry to show "that there was in fact another live person that was involved in these activities." At this point, the trial court recessed and stated that it would make a ruling on the admissibility of the journal entry the following morning.

The following morning defense counsel claimed that under *Bruton v. United States*, 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620 (1968), and *State v. Purdy*, 228 Kan. 264, 615 P.2d 131(1980), allowing the redacted journal entry into evidence would unduly prejudice the defendant. After reading the decision in *Purdy*, the court overruled the defendant's objection and admitted the journal entry into evidence.

Jesus asserts that the trial court violated the rule in *Bruton* when it overruled his objection to the admission of the journal entry. As discussed in *State v. Rodriguez*, 226 Kan. 558, 561, 601 P.2d 686 (1979), the court stated:

"[In *Bruton*,] the court held a defendant is deprived of his rights under the confrontation clause of the Sixth Amendment to the United States Constitution where the extrajudicial statement of a non-testifying codefendant inculpating the defendant is admitted and where the codefendant is not available for cross-examination, although an instruction is given limiting the use of the confession to the codefendant."

Nevertheless, the *Bruton* analysis is not applicable in the present situation. The *Bruton* Court discussed whether a codefendant's confession, which implicated the other codefendant, could be used at trial when the codefendants were being tried jointly. In the present case, Jesus was tried separately from Mario. Therefore, *Bruton* does not apply.

*Lilly v. Virginia*, 527 U.S. 116, 144 L. Ed. 2d 117, 119 S. Ct. 1887 (1999), discussed the Confrontation Clause in a situation where a nontestifying accomplice's confession was admitted into evidence. In discussing this issue, the *Lilly* Court examined the statements by exploring whether "(1) 'the evidence falls within a firmly rooted hearsay exception' or (2) it contains 'particularized guarantees of trustworthiness' such that adversarial testing would be expected to add little, if anything, to the statements' reliability. [Citation omitted.]" 527 U.S. at 124-25. The *Lilly* Court went on to find that the hearsay did not fall within a firmly rooted hearsay exception and that an accomplice's statements which implicate a defendant are inherently unreliable. 527 U.S. at 133-34. The *Lilly* Court further stated that even though the confession was corroborated in part by other evidence, the declarant was read his *Mir-*

*anda* rights, and the declarant knew he was exposing himself to possible prosecution, without being subjected to cross-examination, this was insufficient to overcome the unreliability of an accomplice's confession that implicated a defendant. 527 U.S. at 137-40.

In the present case, we can determine from the record that Mario pled guilty to one count of conspiracy to commit aggravated battery. Because the State failed to provide evidence showing that Mario's confession contained particularized guarantees of trustworthiness, *Lilly* requires us to conclude that Mario's confession was unreliable.

The State asserts that it sought to admit the journal entry to show "that there was in fact another live person that was involved in these activities." Nevertheless, the journal entry does not provide any factual basis for Mario's conviction. The only thing a person could determine by examining the journal entry was that Mario pled guilty to one count of conspiracy to commit aggravated battery. It is only when other facts are revealed that a person could determine that Jesus was the person with whom Mario conspired. Accordingly, the State's contention that the journal entry was only offered to prove that another person was involved is specious.

Although the journal entry had little, if any, probative value, it was highly prejudicial. From the evidence presented at trial, the jury knew that Mario and Jesus had acted together. The journal entry informed the jury that Mario had pled guilty to the conspiracy crime. The jury could have improperly relied on this information to support its guilty verdict. Accordingly, the district court erred in admitting the journal entry.

In *State v. Hebert*, 277 Kan. 61, 96, 82 P.3d 470 (2004), the court recognized that an error of constitutional magnitude may be harmless:

" 'An error of constitutional magnitude is serious and may not be held to be harmless unless the appellate court is willing to declare a belief that the error is harmless. Before an appellate court may declare such an error harmless, the court must be able to declare beyond a reasonable doubt that the error had little, if any, likelihood of having changed the result of the trial. Where the evidence of guilt is of such direct and overwhelming nature that it can be said that evidence erro-

neously admitted or excluded in violation of a constitutional or statutory right could not have affected the result of the trial, such admission or exclusion is harmless.' [Citation omitted.]"

To determine whether a trial error is harmless or prejudicial, each case must be scrutinized and viewed in the light of the trial record as a whole, not on each isolated incident viewed by itself. *State v. Abu-Fakher*, 274 Kan. 584, 613, 56 P.3d 166 (2002). In the present case, Coney testified that he had a confrontation with Jesus and that Mario was present during the confrontation. Coney further testified that after he arrived at the Sundance Apartments, Jesus and Mario arrived and hit him with pipes. Even Jesus acknowledged during his direct testimony that he was with Mario on the night of the crime. Additionally, police discovered evidence that Jesus and Mario were at the scene of the crime. The evidence against Jesus was overwhelming.

Although the district court erred in admitting the journal entry of Mario's conviction, there was little if any chance that the result of the trial would have been different if the journal entry had not been admitted. Thus, the error was harmless.

## Jury Instruction

Next, Jesus maintains that the trial court erred when it refused to instruct the jury on misdemeanor battery as a lesser included offense of aggravated battery. The trial court instructed the jury on aggravated battery under K.S.A. 21-3414(a)(1)(A), a severity level 4 person felony. In order to convict Jesus, this offense required the jury to find that Jesus caused Coney great bodily harm or disfigurement. The trial court also instructed the jury on the lesser included offense of aggravated battery under K.S.A. 21-3414(a)(1)(B), a severity level 7 person felony. This instruction required the jury to find that Jesus caused bodily harm to Coney with a deadly weapon or in a manner whereby great bodily harm, disfigurement, or death could have been inflicted.

At trial, Jesus requested the trial court to instruct the jury on misdemeanor battery under K.S.A. 2004 Supp. 21-3412. The trial court heard arguments on this issue and concluded that the simple battery instruction should not be given. Although acknowledging

that battery is a lesser included offense of aggravated battery, the trial court went on to find that under the facts of the case a misdemeanor battery instruction was not warranted. Defense counsel objected to the failure to instruct the jury on misdemeanor battery.

. On appeal, Jesus maintains that the trial court erred in failing to instruct the jury on misdemeanor battery as a lesser included offense of aggravated battery. In *State v. Mays*, 277 Kan. 359, 378-79, 85 P.3d 1208 (2004), the court stated:

"When reviewing challenges to jury instructions, [an appellate] court must consider the instructions as a whole and not isolate any one instruction. ' "If the instructions properly and fairly state the law as applied to the facts of the case, and a jury could not reasonably have been misled by them, the instructions do not constitute reversible error even if they are in some way erroneous.' " [Citations omitted.]"

In *State v. Young*, 277 Kan. 588, 599-600, 87 P.3d 308 (2004), the court stated:

"Regarding the district court's denial of the requested simple battery instruction, the standard of review for a claim of failing to instruct on a lesser included crime is whether the evidence, when viewed in the light most favorable to the defendant, supported the instruction. The instruction need not be given if the evidence would not have permitted a rational factfinder to find the defendant guilty beyond a reasonable doubt of the lesser included offense. [Citation omitted.] Stated another way, a criminal defendant has a right to an instruction on all lesser included offenses as long as '(1) the evidence, when viewed in the light most favorable to the defendant's theory, would justify a jury verdict in accord with the defendant's theory and (2) the evidence at trial does not exclude a theory of guilt on the lesser offense.' [Citation omitted.]"

In the present case, Jesus was not entitled to an instruction on misdemeanor battery. Even when the evidence at trial is viewed in the light most favorable to Jesus, the evidence does not justify a verdict for misdemeanor battery. Jesus asserts that the jury could have found him guilty of misdemeanor battery because evidence was available that Coney only suffered bodily harm and not great bodily harm. Jesus' argument fails.

· ·. The evidence showed that Jesus used a pipe, which is a deadly weapon, to attack Coney. No evidence was presented showing that Jesus did not use a pipe in the attack. The jury's verdict indicates that it found that Jesus' attack resulted in great bodily harm or

disfigurement. Nevertheless, if the jury believed that Coney's injuries only resulted in bodily harm, the jury would still have had to convict Jesus of the severity level 7 aggravated battery because the bodily harm was caused by Jesus' use of a deadly weapon. Accordingly, Jesus' argument fails.

*Previous Bad Acts*

Next, Jesus maintains that the trial court erred by allowing Coney to testify that he knew Jesus because Jesus had previously attacked security at Latino's Disco and had been asked to leave for being drunk. Jesus did not object to this statement at trial. "A party must make a timely and specific objection to the admission of evidence at trial in order to preserve the issue for appeal. [Citation omitted.]" *State v. Kunellis*, 276 Kan. 461, 477, 78 P.3d 776 (2003); see K.S.A. 60-404. Therefore, this issue has not been properly preserved for review.

Additionally, as stated earlier, the evidence against Jesus was overwhelming. Thus, any error in admitting this evidence was harmless. A defendant is entitled to a fair trial, not a perfect one. *State v. Broyles*, 272 Kan. 823, 842, 36 P.3d 259 (2001).

Reversed as to the defendant's conviction for conspiracy to commit aggravated battery and affirmed as to the defendant's conviction for aggravated battery.

Affirmed in part and reversed in part.