(214 P.3d 1211)

No. 100,596

STATE OF KANSAS, *Appellee*, v. ALEXANDER TAPIA, *Appellant*.

Petition for review granted September 8, 2010.

Opinion filed August 28, 2009.

*Heather Cessna*, of Kansas Appellate Defender Office, for appellant.

*Don L. Scott*, county attorney, and *Steve Six*, attorney general, for appellee.

Before MCANANY, P.J., PIERRON and MARQUARDT, JJ.

MCANANY, J.: Alexander Tapia appeals his convictions for non-residential burglary, vehicular burglary, and conspiracy to commit burglary. He claims the State's conspiracy charge against him was fatally defective and the district court erred in not giving the jury an accomplice instruction. He also claims his sentences violate the rule in *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). We find no reversible error and affirm.

At about midnight Trooper James Parr stopped an SUV for speeding. The vehicle was occupied by Tapia, Aram Garcia, and Omar Fraire. Shortly thereafter, at about 1:15 a.m., the police responded to a report of a burglary at the residence of James Mongold. Police found a smashed window in Mongold's pickup truck, and Mongold's garage door was open. Mongold's computer jump drive, cell phone, and gas cards were missing from his truck; and a toolbox full of tools, a jack, and two floor creepers were missing from his garage.

Shortly thereafter, Trooper Parr again stopped the SUV occupied by Tapia, Garcia, and Fraire because their vehicle matched the description of the burglars' vehicle. Parr saw Mongold's tool chest, a floor creeper, and jack in the SUV. The three men were arrested. During a search incident to Tapia's arrest, Parr found Mongold's jump drive and gas cards in Tapia's pocket.

Garcia gave a statement to the police on the night of the burglaries. The contents of the statement were described in an affidavit which was filed with the district court and available to Tapia in the preparation of his defense. Following Tapia's arrest the court conducted a preliminary hearing, though a transcript of the hearing was not preserved. After Tapia was bound over for trial, the court ordered the prosecutor to make available to Tapia for inspection and copying all discoverable items known to the prosecutor.

Fraire and Garcia testified against Tapia at trial in exchange for being granted diversions. Garcia testified that Tapia spotted Mongold's truck and decided to break into it. Garcia stopped the SUV and served as a lookout while Tapia broke into the truck. Tapia then opened the garage door and told Garcia to pull into the alley behind the garage so Tapia could load the tool box and two creepers into the SUV. After they left, Tapia wanted to get his truck so he could return and "wipe out the house [and] the garage." They were on their way to Tapia's house to get his truck when Trooper Parr stopped them.

Garcia was cross-examined extensively at trial regarding the statement he gave the police on the night of the burglaries. Fraire's testimony confirmed Garcia's version of events. Fraire was also cross-examined regarding a statement he had given the police.

Tapia did not submit any proposed instructions to the court. During the jury instructions conference, Tapia did not object to the court's conspiracy instruction. However, he requested a "co-conspirator" instruction, apparently referring to the PIK accomplice instruction. The court refused Tapia's request.

Tapia was convicted as charged. He appeals his convictions and his sentences.

*Conspiracy to Commit Burglary*

In charging Tapia with conspiracy to commit burglary, the charging document alleged that he agreed with Garcia and Fraire "to

commit the crime of Burglary and an overt act in furtherance of the conspiracy was committed, to-wit: agreed with Aram Garcia and Omar Fraire to break into a garage to commit a theft therein." The charge clearly is defective because rather than alleging an overt act in furtherance of the conspiracy, it merely alleged the conspirators' agreement itself. See *State v. Sweat*, 30 Kan. App. 2d 756, 761, 48 P.3d 8, *rev. denied* 274 Kan. 1118 (2002); *State v. Crockett*, 26 Kan. App. 2d 202, Syl. ¶ 4, 987 P.2d 1101 (1999).

Tapia raises an issue of law over which we exercise unlimited review. See *Sweat*, 30 Kan. App. 2d at 760. He argues that this defect in the complaint deprived the district court of jurisdiction to try him on the conspiracy charge. Tapia relies on *State v. Marino*, 34 Kan. App. 2d 857, 126 P.3d 426, *rev. denied* 281 Kan. 1380 (2006), for support. The court in *Marino* discussed at length our Supreme Court's opinion in *State v. Shirley*, 277 Kan. 659, 661, 89 P.3d 649 (2004). Our understanding of the effect of *Shirley* is at odds with that of the *Marino* court.

### 1. State v. Shirley

The complaint in *Shirley* was similarly defective. It failed to allege a specific overt act in furtherance of the claimed conspiracy to manufacture methamphetamine. It simply alleged that Shirley committed an " 'overt act in furtherance of the conspiracy.' " 277 Kan. at 665. Shirley moved to arrest judgment based upon the defective complaint. The trial court denied relief. At the close of the evidence, the court instructed the jury that the overt act element of the conspiracy charge is established by proof that " 'the defendant or any party to the agreement acted in furtherance of the agreement.' " 277 Kan. at 666. Shirley was acquitted of numerous related drug charges. He was convicted solely on the conspiracy charge.

The court in *Shirley* discussed at length the standards for evaluating the sufficiency of a charging document before and after its decision in *State v. Hall*, 246 Kan. 728, 793 P.2d 737 (1990), *overruled in part on other grounds by Ferguson v. State*, 276 Kan. 428, 78 P.3d 40 (2003). *Hall* distinguishes cases in which the defendant has moved to arrest judgment due to the defect in the charging

document from those in which the defendant has not. When a motion to arrest judgment has been asserted before the district court, the pre-*Hall* standard applies, *i.e.*, "[i]f the charging document does not set out the essential elements of the crime, it is fatally defective and the conviction must be reversed for lack of jurisdiction." *Shirley*, 277 Kan. at 662. If no motion to arrest judgment was made before the district court and the issue is raised for the first time on appeal, the *Hall* standards apply, *i.e.*, to obtain a reversal based upon a defective complaint the defendant must demonstrate that (1) the charge as written prejudiced the preparation of a defense; (2) the charge as written would impair the defendant's ability to plead the conviction as a bar to a later prosecution; or (3) the charge as written limited the defendant's substantial rights at trial. See *State v. McElroy*, 281 Kan. 256, 261, 130 P.3d 100 (2006). The overriding test in *Hall* is one of common sense, and the charging document is to be " 'construed liberally in favor of validity.' " *McElroy*, 281 Kan. at 261.

"Common sense will be a better guide than arbitrary and artificial rules. The sufficiency of an information should be determined on the basis of practical rather than technical considerations when addressed for the first time on appeal. [Citations omitted.]" *Hall*, 246 Kan. at 754.

Because Shirley had moved to arrest judgment before the district court, the court on appeal applied the pre-*Hall* standard, which required it to "focus on technical considerations." *Shirley*, 277 Kan. at 661.

Applying this strict technical compliance standard, the court noted that K.S.A. 22-3201(b) requires the State to set forth the essential facts of the crime, and K.S.A. 21-3302(a) requires the pleading of a specific allegation of an overt act in furtherance of a claimed conspiracy. Applying K.S.A. 21-3302(a) in its pre-*Hall* analysis, the court concluded "that the complaint [was] fatally defective under the pre-*Hall* standard." *Shirley*, 277 Kan. 665.

Finally, the error in Shirley's complaint was aggravated by the jury instruction that permitted the jury to use conduct of Shirley's coconspirator to satisfy the overt act requirement when the State had specifically charged that it was Shirley who committed an overt act in furtherance of the conspiracy.

## 2. State v. Marino

In *Marino*, the defendant and his brother were denied entry into a local bar. When the defendant attempted to strike the bar's bouncer, the bouncer punched him in the face and knocked him down. Marino and his brother left. Later that night, Marino and his brother attacked the bouncer when he returned to his apartment after work. Marino was charged with and convicted of aggravated battery and conspiracy to commit aggravated battery. However, the complaint failed to allege a specific overt act in furtherance of the conspiracy.

Marino's brother did not testify at Marino's preliminary hearing. The brother pled guilty to conspiracy to commit aggravated battery, received a suspended sentence, and was deported to Mexico before Marino's trial. Because the brother was unavailable to testify at Marino's trial, the State offered into evidence the journal entry memorializing that the brother had pled guilty to conspiracy, claiming that the journal entry showed " 'that there was in fact another live person that was involved in these activities.' " 34 Kan. App. 2d at 867. The journal entry was admitted over Marino's objection. The trial court attempted to cure the flaw in the charging document by referring to specific overt acts in a jury instruction. Marino failed to move to arrest judgment based upon the defective complaint.

On appeal, the court acknowledged that in *Shirley* the Supreme Court applied the pre-*Hall* standard of strict technical compliance *because* Shirley had moved to arrest judgment before the district court. Marino had not. Nevertheless, the *Marino* court found the complaint to be fatally defective measured by the pre-*Hall* standard. The court noted:

"Generally, if a defendant fails to move to arrest judgment at the district court, the defendant must establish one of the *Hall* factors to prevail on a claim of a defective complaint on appeal.

"[Marino], however, maintains that K.S.A. 21-3302(a), the statute governing conspiracy, dictates the outcome when the State fails to allege an overt act." *Marino*, 34 Kan. App. 2d at 861.

The court found this argument to have merit. 34 Kan. App. 2d at 861. This in spite of the fact that the Supreme Court in *Shirley*

applied K.S.A. 21-3302(a) to the State's complaint only as part of its pre-*Hall* technical compliance analysis. The *Marino* court treated noncompliance with K.S.A. 21-3302(a) as a *cause* for conducting a pre-*Hall* technical compliance analysis. The Supreme Court in *Shirley*, on the other hand, treated noncompliance with K.S.A. 21-3302(a) as grounds for reversal *after* it had determined that *Hall* did not apply.

### 3. *Applying the caselaw*

Because Tapia did not move to arrest judgement before the district court and now raises the issue of the defective complaint for the first time on appeal, we are duty bound to follow the court's reasoning in *Shirley* and apply the *Hall* standard to Tapia's complaint. Thus, in order to prevail, Tapia must demonstrate that (1) the charge as written prejudiced him in the preparation of his defense; (2) the charge as written would impair his ability to plead the conviction as a bar to a later prosecution; or (3) the charge as written limited his substantial rights at trial.

Tapia presents no facts or arguments on appeal that address the *Hall* standards. He places all his eggs in the *Marino* basket. Our examination of the record discloses no prejudice to Tapia from the defect in the complaint. Garcia's testimony was no surprise to Tapia. Garcia gave a videotaped statement to police on the night of his arrest which previewed his trial testimony. This statement was available to Tapia in discovery. Fraire also gave the police a statement. Both statements were available to Tapia well in advance of trial. Garcia and Fraire were both questioned on cross-examination about their statements. The lack of specificity in the complaint did not impede Tapia in the preparation of his defense to the conspiracy charge.

Further, we concluded that the lack of a specifically alleged overt act will not impede Tapia's ability to plead his conspiracy conviction as a double jeopardy bar to any attempt by the State to prosecute him again for this same crime.

Finally, we find no limitation placed upon Tapia's trial rights from this omission in the complaint. In *Shirley* there was no proof of any conspiratorial acts by the defendant, who was acquitted of

every charge except the conspiracy charge. On the contrary, there was overwhelming evidence of overt acts committed by Tapia in breaking into the truck and into the garage. Shortly after the burglary Tapia was caught with the stolen goods in the vehicle and on his person.

In *Marino*, the State sought to prove the conspiracy by the admission of a journal entry memorializing the admission of guilt by a now-deported and unavailable participant. On the contrary, Tapia's coconspirators testified in person and in detail regarding the facts of the crimes, and Tapia had ample opportunity to test their credibility before the jury.

Finally, the court instructed the jury that the overt act necessary to convict Tapia of the conspiracy was "entering a 2005 Chevrolet pickup and/or a garage at 1226 N. Calhoun" on the date of the burglary. Because he was also defending against charges of burglarizing the truck and the garage, this instruction did not impose any added burden on Tapia or expand the scope of his criminal liability under the conspiracy charge.

We conclude that the defect in the charging document did not adversely affect Tapia in the trial of his case. Accordingly, under the standard announced in *Hall* and mandated in *Shirley*, we find no reversible error in the manner in which Tapia was charged.

*Accomplice Instruction*

Tapia claims that the trial court erred by denying his request for an instruction cautioning the jury to view the testimony of his coconspirators with suspicion. He claims the instruction he sought was PIK Crim. 3d 52.18, which instructs the jury: "An accomplice witness is one who testifies that (he)(she) was involved in the commission of the crime with which the defendant is charged. You should consider with caution the testimony of an accomplice."

Tapia contends that "without Garcia's testimony in particular, there would have been no evidence that Mr. Tapia himself was the one who physically got out of the vehicle, broke the window of the pickup and then entered the garage."

Our Supreme Court stated in *State v. Moore*, 229 Kan. 73, 80, 622 P.2d 631 (1981), that "[w]hen an accomplice testifies, and

whether that testimony is corroborated or not, the better practice is for the trial court to give a cautionary instruction." Garcia and Fraire clearly were accomplices. See *State v. Simmons*, 282 Kan. 728, 737, 148 P.3d 525 (2006). However, when accomplice testimony is not the sole basis for the conviction and the defendant's guilt is clear, or "when the jury is cautioned about the weight to be accorded testimonial evidence in other instructions," there is no reversible error. 282 Kan. at 740.

Even when viewing the evidence in the light more favoring Tapia, as *State v. Hayden*, 281 Kan. 112, 131-32, 130 P.3d 24 (2006), requires us to do, we find no error in the district court's failure to give an accomplice instruction. The court instructed the jurors that they were to weigh the relative credibility of each witness. Tapia cross-examined Garcia and Fraire about the deals they had struck with the State. Tapia's closing argument focused on the lack of credibility of Garcia and Fraire and the diversion agreements they had entered into with the State regarding their own charges.

Further, Tapia's guilt was clear. When Tapia was arrested police found tools stolen from Mongold's garage in the SUV and property stolen from Mongold's truck in Tapia's pockets. Neither Garcia nor Fraire had any of Mongold's property on their persons.

Accordingly, we conclude the failure to give an accomplice instruction was not error.

*Sentencing*

Tapia argues that his criminal history and the aggravating factors used in his sentencing were not proven to a jury beyond a reasonable doubt. His arguments have been rejected by our Supreme Court in *State v. Johnson*, 286 Kan. 824, 190 P.3d 207 (2008), and *State v. Ivory*, 273 Kan. 44, 47-48, 41 P.3d 781 (2002). We are duty bound to follow those precedents. *State v. Merrills*, 37 Kan. App. 2d 81, 83, 149 P.3d 869, *rev. denied* 284 Kan. 949 (2007). Tapia's sentencing criticisms fail.

Affirmed.