No. 100,596

STATE OF KANSAS, *Appellee*, v. ALEXANDER TAPIA, *Appellant*.

(287 P.3d 879)

Opinion filed November 2, 2012.

*Heather R. Cessna*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Don L. Scott*, county attorney, argued the cause, and *Steve Six*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.: A jury convicted Alexander Tapia of nonresidential burglary, theft, vehicular burglary, and conspiracy to commit non-

residential burglary. On appeal to the Court of Appeals, Tapia argued: (1) The evidence to support his charge of conspiracy to commit nonresidential burglary was insufficient due to a defect in the complaint; (2) the district court erred by denying his request for an accomplice jury instruction; (3) the district court violated his constitutional rights when it sentenced him to an enhanced sentence based upon his criminal history without first proving those facts to a jury beyond a reasonable doubt; and (4) the district court violated his constitutional rights when it sentenced him to the aggravated terms within the applicable sentencing grid boxes without first proving those facts to a jury beyond a reasonable doubt.

The Court of Appeals rejected Tapia's arguments and affirmed his convictions and sentences. *State v. Tapia,* 42 Kan. App. 2d 615, 214 P.3d 1211 (2009), *rev. granted* September 8, 2010. On review of that decision, we affirm the Court of Appeals and district court.

### FACTS AND PROCEDURAL HISTORY

Around midnight on June 11, 2007, Highway Patrol Trooper James Parr stopped a Chevy Tahoe for speeding. The Tahoe was occupied by Tapia, Aram Garcia, and Omar Fraire. Parr issued a warning to the driver and released him.

Approximately 1 hour later, law enforcement officers responded to a reported burglary at the residence of James Mongold. The passenger window had been broken out of a pickup truck parked outside the residence, and a computer jump drive, a cell phone, a garage door opener, and gas cards had been taken from the pickup truck. Also, Mongold's garage door had been opened and several items were stolen from the garage, including a tool box, several hand tools, and two floor creepers that are used to slide under a vehicle to change oil or perform other work.

Shortly after law enforcement officers were dispatched to the burglary, Parr heard radio transmissions that included a description of the burglar and the suspect's vehicle. Within a few minutes, Parr saw a vehicle, a Chevy Tahoe, matching that description. The Tahoe's driver was speeding and ran a red stoplight, causing Parr to initiate a traffic stop. When Parr approached the Tahoe, he realized it was the same Tahoe he had stopped earlier. He also noticed that

the occupants were the same. Parr observed (1) a car jack, a floor creeper, and a tool box that he had not seen during the first stop; (2) Tapia's clothes matched the description the dispatcher had given of the burglar; and (3) Tapia was attempting to take off black baseball gloves, which Parr found unusual given that he did not see any other baseball equipment and it was very hot and muggy. At this point, Tapia, Garcia, and Fraire were arrested. As a search incident to arrest, Parr searched Tapia's pockets where he found gas cards and a jump drive. Mongold later identified the items found in the Tahoe and on Tapia's person as those taken from the pickup truck and garage.

After the arrest, when interviewed by law enforcement officers, Fraire denied any knowledge of the crimes. Garcia, however, gave a statement. His statement was described in an affidavit filed with the district court in support of a warrant for Tapia's arrest and later made available to Tapia through a discovery order entered by the court. According to information in the affidavit, Garcia stated that he was driving the Tahoe when Fraire told him to pull over near a white pickup truck. Tapia got out of the Tahoe, broke the pickup truck's window, and grabbed a cell phone and a garage door opener. Fraire or Tapia used the garage door opener to get into the garage, and both of them carried a tool box out of the garage and put it in the back of the Tahoe. Garcia then drove Fraire and Tapia from the scene.

Garcia, Fraire, and Tapia were all charged, but Garcia and Fraire entered into diversion agreements. Both testified at Tapia's jury trial. Garcia testified that Tapia saw Mongold's pickup truck and decided to break into it. Garcia served as a lookout and testified that he did not actually see Tapia break the pickup truck's window, but he heard the window shatter. Tapia returned to the Tahoe with a cell phone and a garage door opener, which Tapia used to open Mongold's garage. At Tapia's direction, Garcia pulled the Tahoe into the alley behind the garage. From his vantage point, Garcia did not actually see Tapia go into the garage, but when Tapia came back to the Tahoe, he was carrying a tool box. Tapia then went back to the garage and returned with two creepers. Garcia also testified that Tapia was wearing black baseball gloves when he

headed toward the garage. Contrary to the statement Garcia had given to the officers on the night of the incident, Garcia told the jury that Fraire never exited the Tahoe. According to Garcia, when Parr stopped them the second time, they were driving to Tapia's residence so Tapia could get his truck because he planned to return and "wipe out the house [and] the garage."

Fraire's testimony confirmed Garcia's version of events. Fraire also indicated that Tapia was the only individual who entered Mongold's truck and garage.

The jury convicted Tapia of nonresidential burglary, theft, vehicular burglary, and conspiracy to commit nonresidential burglary. The district court sentenced Tapia to serve 23 months' imprisonment for nonresidential burglary, 7 months for theft, 7 months for vehicular burglary, and 7 months for conspiracy to commit nonresidential burglary, all aggravated terms within the applicable sentencing grid boxes. The court ordered all of the felony sentences to be served consecutive to each other and to Tapia's sentences imposed in another case.

Tapia timely appealed. After the Court of Appeals affirmed his convictions and sentences, *Tapia*, 42 Kan. App. 2d at 618-23, Tapia filed a petition seeking this court's review of the Court of Appeals' decision. This court accepted review and has jurisdiction under K.S.A. 20-3018(b) and K.S.A. 22-3602(e).

### SUFFICIENCY OF EVIDENCE

Before the Court of Appeals, Tapia challenged the sufficiency of the evidence relating to his conspiracy conviction on the ground that the complaint failed to allege an overt act in furtherance of a conspiracy agreement as required by K.S.A. 21-3302(a) (conspiracy), which states:

"(a) A conspiracy is an agreement with another person to commit a crime or to assist in committing a crime. No person may be convicted of a conspiracy unless an overt act in furtherance of such conspiracy is *alleged and proved* to have been committed by such person or by a co-conspirator." (Emphasis added.)

Here, the complaint against Tapia failed to satisfy this requirement because the State failed to allege an overt act, instead reit-

erating that there was an agreement. Specifically, the complaint stated:

"That on or about the 11th day of June, 2007 the said above person named in the captioned . . . of the complaint, within the above named jurisdiction in the State of Kansas, then and there being, did then and there contrary to statute or ordinance unlawfully, feloniously, and willfully agree with another person, to-wit: Aram Garcia and Omar Fraire to commit the crime of Burglary and an *overt act in furtherance of the conspiracy was committed, to wit: agreed with Aram Garcia and Omar Fraire to break into a garage to commit a theft therein,* in violation of K.S.A. 21-3302 and 21-3715(b) Conspiracy to Commit Burglary, a level 9 non-person felony." (Emphasis added.)

The Court of Appeals held the complaint against Tapia was "clearly . . . defective" for failing to comply with the pleading requirement in K.S.A. 21-3302(a). *Tapia,* 42 Kan. App. 2d at 618. The State does not challenge this ruling. Hence, we accept that the complaint was defective and that the State failed to meet the allegation requirement of K.S.A. 21-3302(a).

Because the complaint was defective, the Court of Appeals addressed Tapia's potential remedy. In doing so, the panel concluded the defect in the complaint did not deprive the district court of jurisdiction to try Tapia on the conspiracy charge. Further, as we will discuss in more detail, the panel concluded that Tapia's insufficiency of evidence argument was improper. See *Tapia,* 42 Kan. App. 2d at 618-22.

In his petition for review, Tapia contends the Court of Appeals erred in treating his argument as a defective complaint claim. Rather, Tapia argues that because K.S.A. 21-3302(a) "requires the overt act had to both be alleged and proved, and it was not alleged in this case, the State presented insufficient evidence to support the conspiracy charge against Mr. Tapia." Tapia asserts the Court of Appeals panel should have followed the decision of another Court of Appeals panel in *State v. Marino,* 34 Kan. App. 2d 857, 864, 126 P.3d 426, *rev. denied* 281 Kan. 1380 (2006). In *Marino,* the Court of Appeals determined the evidence of conspiracy was insufficient because the State failed to allege an overt act in Marino's complaint as required in K.S.A. 21-3302(a) and, therefore,

failed to prove that an overt act had been committed in furtherance of the conspiracy. *Marino*, 34 Kan. App. 2d at 861-66.

In this case, the Court of Appeals disagreed with Tapia's argument and concluded the result in *Marino* was at odds with this court's decision in *State v. Shirley*, 277 Kan. 659, 89 P.3d 649 (2003). *Tapia*, 42 Kan. App. 2d at 621-22.

Shirley *and* Hall

In *Shirley*, the defendant, like Tapia, argued the complaint charging him with conspiracy to manufacture methamphetamine was defective because it failed to allege the specific overt act committed in furtherance of the conspiracy as required by K.S.A. 21-3302(a). The *Shirley* court agreed with the defendant's argument because the complaint merely stated that the defendant had committed an " 'overt act in furtherance of the conspiracy.' " *Shirley*, 277 Kan. at 665.

The *Shirley* court then examined whether this deficiency deprived the district court of jurisdiction over the complaint. To answer this question, the *Shirley* court applied the holding of *State v. Hall*, 246 Kan. 728, 754, 793 P.2d 737 (1990), *overruled in part on other grounds by Ferguson v. State*, 276 Kan. 428, 78 P.3d 40 (2003).

In *Hall*, the court examined several issues in which the defendant argued that various charges in an information were defective. The *Hall* court explained the principles that served as the basis for Hall's arguments, stating:

"The Bill of Rights in the Kansas Constitution requires that the accused be allowed to demand the nature and cause of the accusation. Kan. Const. Bill of Rights, § 10. . . . The § 10 language is similar to the language of the Sixth Amendment to the United States Constitution, which extends to an accused the right 'to be informed of the nature and cause of the accusation.' [Citation omitted.]

"The constitutional protections referred to are implemented by the requirements of K.S.A. 22-3201. The complaint, information, or indictment shall be a plain and concise written statement of the essential facts constituting the crime charged and, when drawn in the language of the statute, shall be deemed sufficient. An information is sufficient if it clearly informs the defendant of the precise offense of which he or she is accused so that the accused may prepare a defense and so that a judgment thereon will safeguard the accused from a subsequent prosecution for the same offense. [Citation omitted.]" *Hall*, 246 Kan. at 753-54.

The *Hall* court also noted that caselaw required each element of the crime to be alleged. See *Hall*, 246 Kan. at 746-47.

A failure to meet these requirements is not necessarily fatal to the State's case, however. See *Hall*, 246 Kan. at 756-59. The *Hall* court discussed procedural mechanisms available to the State to cure a defective allegation, such as an amendment to the complaint or information, and those available to a defendant to protect the right to notice, including the right to request a bill of particulars or to file a motion to arrest judgment. *Hall*, 246 Kan. at 758-60.

Even if these procedural mechanisms are not used, a defendant is not necessarily entitled to a reversal of a conviction. The *Hall* court explained that "[t]he longer it takes for the defendant to challenge the sufficiency of the information, the greater the presumption of regularity." *Hall*, 246 Kan. at 761. The *Hall* court adopted two different tests for determining if a defective complaint warrants reversal of a conviction—one to be used if a defendant challenges the charging document through a motion for arrest of judgment before a district court, which the *Hall* court indicated was the "proper procedure," and the other if a defendant raises the challenge for the first time on appeal. *Hall*, 246 Kan. at 760-61, 764-65; see *Shirley*, 277 Kan. at 661-62.

As to the first test, when a motion to arrest judgment is filed in the district court, the *Hall* court directed the district court to "test its merit by utilizing the rationale of our pre-*Hall* cases." *Hall*, 246 Kan. at 764. The *Shirley* court explained what this meant, stating: "Under the pre-*Hall* standard, the court must focus on technical considerations. [Citations omitted.] If the charging document does not set out the essential elements of the crime, it is fatally defective and the conviction must be reversed for lack of jurisdiction. [Citation omitted.]." *Shirley*, 277 Kan. at 661-62.

As to the second test, a defendant who waits until the appeal to challenge the charging document must satisfy a "new standard of review" established by the *Hall* court. *Shirley*, 277 Kan. at 662; see *Hall*, 246 Kan. at 765. The *Shirley* court explained that this new standard—referred to as the post-*Hall* standard or test—requires the defendant to show that the claimed defect either

"(1) prejudiced the defendant's preparation of a defense, (2) impaired the defendant's ability to plead the conviction in any subsequent prosecution, or (3) limited the defendant's substantial rights to a fair trial under the Sixth Amendment to the United States Constitution or Section 10 of the Kansas Constitution Bill of Rights. [*Hall*,] 246 Kan. at 765." *Shirley*, 277 Kan. at 662.

The *Shirley* court, applying these principles from *Hall*, noted the defendant followed the "proper procedure" and first challenged the complaint at the district court level in a motion for arrest of judgment. Hence, the court concluded, the applicable test was the pre-*Hall* standard that focuses on technical compliance with the essential elements of the crime. *Shirley*, 277 Kan. at 661-62.

In examining the statutory requirements under the conspiracy statute, K.S.A. 21-3302(a), the *Shirley* court sought to harmonize K.S.A. 21-3302(a) with K.S.A. 22-3201(b), the statute that requires the complaint to state "the essential facts constituting the crime charged." The court noted the specific allegation requirement under the conspiracy statute, K.S.A. 21-3302(a), concluding it "is the only criminal statute that requires such a specific allegation in the elements of a crime." *Shirley*, 277 Kan. at 665. Applying this unique requirement, the *Shirley* court concluded that when the State simply alleges an " 'overt act in furtherance of the conspiracy,' such language fails to adequately inform the accused of the charges against him or her and limits his or her ability to prepare a defense." *Shirley*, 277 Kan. at 665. Thus, the court ruled that the complaint in Shirley's case was fatally defective under the pre-*Hall* technical standard and, as a result, his conviction had to be reversed. *Shirley*, 277 Kan. at 665.

### Tapia's *Discussion of* Shirley *and* Hall

In this case, the Court of Appeals, having found that the allegation in the complaint against Tapia was insufficient because it only alleged an agreement and not an overt act, applied the post-*Hall* standard because Tapia had not filed a motion to arrest judgment in the district court. Instead, Tapia had waited until his appeal to raise a challenge. The Court of Appeals noted: "Tapia presents no facts or arguments on appeal that address the *Hall* standards. He places all his eggs in the *Marino* basket." *Tapia*, 42

Kan. App. 2d at 621. After a discussion of the post-*Hall* standard, the Court of Appeals concluded Tapia had not been prejudiced in his defense because he was aware of Garcia's and Fraire's statements to officers, the wording of the complaint would not impede Tapia's ability to assert double jeopardy in a later prosecution, and Tapia's rights at trial had not been limited. *Tapia*, 42 Kan. App. 2d at 621. In conclusion, the Court of Appeals noted that "there was overwhelming evidence of overt acts committed by Tapia in breaking into the truck and into the garage. Shortly after the burglary Tapia was caught with the stolen goods in the vehicle and on his person." *Tapia*, 42 Kan. App. 2d at 622; see also *State v. Wilson*, No. 105,029, 2011 WL 5389894, at *8 (Kan. App. 2011) (unpublished opinion) (rejecting sufficiency of the evidence argument based on failure to allege an overt act and "follow[ing] the *Tapia* court's well-reasoned analysis and review[ing] the issue under the *Hall* factors, as required by *Shirley*"), *petition for review filed* December 5, 2011.

In his petition for review, Tapia does not take issue with the Court of Appeals' analysis of the post-*Hall* factors. Nor does he question the *Hall* decision. Rather, he states:

"Mr. Tapia does not now, and did not before the Court of Appeals, argue that his defective complaint prejudiced his ability to defend himself at trial. Mr. Tapia's argument has always been that the State presented insufficient evidence of conspiracy because, in order to convict Mr. Tapia of conspiracy under the plain language of the conspiracy statute, that overt act had to be both alleged and proven. Mr. Tapia's complaint was defective, however, his issue on appeal is that this caused the State to present insufficient evidence. The State proved the overt act at trial. However, the State failed to allege the overt act. Therefore, without the required allegation of the overt act (which did not occur because of the defective complaint), the State has presented insufficient evidence of Mr. Tapia's conspiracy in this case."

The decision in *Shirley* did not address this argument, according to Tapia. He therefore disagrees with the Court of Appeals' determination that *Shirley* is controlling in this case. Instead, he continues to argue the reasoning and holding of *Marino*, 34 Kan. App. 2d 857, applies.

Marino

In *Marino*, a different panel of the Court of Appeals agreed with Marino's argument that there can be no conviction for conspiracy unless an overt act is alleged and that same overt act is proved. The complaint charging Marino with conspiracy to commit aggravated battery merely alleged that " 'an overt act in furtherance of the conspiracy was committed . . . .' " *Marino*, 34 Kan. App. 2d at 860. Marino had not, however, moved to arrest judgment in the district court.

The *Marino* court noted that usually if a complaint fails to allege an element and a defendant fails to move to arrest judgment a defendant is required to establish one of the three post-*Hall* factors to prevail on his or her defective-complaint claim. But the court noted the unique allegation requirement in K.S.A. 21-3302(a) and determined that "[t]his means that an overt act is an essential element of the crime of conspiracy." *Marino*, 34 Kan. App. 2d at 862. Yet, rather than treat the overt act allegation requirement in the same manner as other elements by applying *Hall*, the court concluded *Hall*'s analysis did not apply. In reaching this conclusion, the *Marino* court found the *Shirley* decision instructive, but it relied on a different portion of the *Shirley* decision—a discussion of a jury instruction regarding the elements of conspiracy—rather than the *Shirley* court's defective complaint discussion. *Marino*, 34 Kan. App. 2d at 862-63.

The jury instruction issue in *Shirley* was, according to the *Shirley* court itself, moot because the court had reversed Shirley's conspiracy conviction based on the defective complaint; nevertheless, the *Shirley* court chose to address the issue because "it highlights some of the problems that can occur when the complaint fails to allege specific facts of the overt act in furtherance of a conspiracy." *Shirley*, 277 Kan. at 665-66. In other words, the discussion on which the *Marino* court relied was dicta.

The jury instruction in *Shirley* provided " '[t]hat the defendant or *any party to the agreement* acted in furtherance of the agreement by an overt act.' " *Shirley*, 277 Kan. at 666. This language differed from language in the complaint, which indicated Shirley

was the one who committed the overt act. *Shirley*, 277 Kan. at 667. In discussing the propriety of the jury instruction, the *Shirley* court stated:

"K.S.A. 21-3302(a) requires that an overt act in furtherance of the conspiracy be alleged and proved. Because the statutory language joins allegation and proof with the conjunction 'and,' both the factual allegation in the charging document and the proof of the same factual allegation are required for a conviction. Thus, to find a defendant guilty, the jury must find that the defendant or a coconspirator committed the overt act that was alleged in the charging document. The charging document must specify both the act and the actor." *Shirley*, 277 Kan. at 667.

Citing this discussion in *Shirley*, the *Marino* court concluded: "*Shirley* explains that if the State is required to allege an essential element in the charging document, the essential element should not be constructively amended or broadened by a later jury instruction." *Marino*, 34 Kan. App. 2d at 863. Although not faced with a claim of instructional error, the *Marino* court nevertheless concluded that this portion of the *Shirley* decision supported the defendant's argument in which he essentially challenged the sufficiency of the evidence. The *Marino* court concluded the legislature's intent was for "the State to allege in the complaint or the indictment and to prove at trial that an overt act in furtherance of the conspiracy has been committed." *Marino*, 34 Kan. App. 2d at 864. Because the State failed to allege an overt act, the *Marino* court determined that the evidence was insufficient for a rational factfinder to conclude that the defendant was guilty beyond a reasonable doubt of conspiracy to commit aggravated battery. *Marino*, 34 Kan. App. 2d at 864.

Because it applied a sufficiency test, the *Marino* court concluded: "Simply stated, based upon the complaint, the State failed to prove that an overt act had been committed in the furtherance of the conspiracy. As a result, the *Hall* factors are inapplicable to this case." *Marino*, 34 Kan. App. 2d at 864. The *Marino* court continued, however, stating that even if the post-*Hall* standard was applied, the complaint had to be dismissed. First, the court determined that the lack of notice of the overt act in the complaint deprived the defendant of due process of law. Second, because K.S.A. 21-3302(a) requires proof of the commission of the overt

act alleged in the complaint, the court concluded it was impossible for the State to prove an overt act that was never alleged, which denied the defendant a fair trial. *Marino*, 34 Kan. App. 2d at 864-66.

Tapia's *Discussion of* Marino

The Court of Appeals panel in the present case disagreed with the *Marino* court's conclusions regarding the effect of the *Shirley* decision. The *Tapia* court noted:

"[The *Marino* court reached its holding] in spite of the fact that the Supreme Court in *Shirley* applied K.S.A. 21-3302(a) to the State's complaint only as part of its pre-*Hall* technical compliance analysis. The *Marino* court treated noncompliance with K.S.A. 21-3302(a) as a *cause* for conducting a pre-*Hall* technical compliance analysis. The Supreme Court in *Shirley*, on the other hand, treated noncompliance with K.S.A. 21-3302(a) as grounds for reversal after it had determined that *Hall* did not apply." *Tapia*, 42 Kan. App. 2d at 620-21.

The *Tapia* court also factually distinguished *Marino*, noting that Marino's coconspirator did not testify at trial and in that case the State sought to prove the conspiracy by admitting a journal entry, while Tapia's coconspirators testified in person, giving Tapia ample opportunity to test their credibility before the jury. *Tapia*, 42 Kan. App. 2d at 622. Also, in *Tapia*, the district court had instructed the jury that the overt act necessary to convict Tapia of conspiracy was " 'entering a 2005 Chev[r]olet pickup and/or a garage at 1226 N. Calhoun' " on the date of the burglary. *Tapia*, 42 Kan. App. 2d at 622. Because Tapia was also charged with burglarizing the pickup truck and the garage, the *Tapia* court concluded "this instruction did not impose any added burden on Tapia or expand the scope of his criminal liability under the conspiracy charge." *Tapia*, 42 Kan. App. 2d at 622.

*Defective Complaint or Insufficiency*

Our resolution of the question of whether the *Tapia* or *Marino* courts correctly analyzed whether the failure to allege an overt act means there will be a failure of proof requires us to interpret K.S.A. 21-3302(a). As in any situation in which a court is called upon to interpret or construe statutory language, the touchstone is legislative intent. To define legislative intent, a court begins by exam-

ining and interpreting the language the legislature used. Only if that language is ambiguous does a court rely on any revealing legislative history or background considerations that speak to legislative purpose, as well as the effects of application of canons of statutory construction. When a statute is plain and unambiguous, a court merely interprets the language as it appears; a court is not free to speculate and cannot read into the statute language not readily found there. *Stewart Title of the Midwest v. Reece & Nichols Realtors*, 294 Kan. 553, 557, 276 P.3d 188 (2012); *Robinson v. City of Wichita Retirement Bd. of Trustees*, 291 Kan. 266, 280, 241 P.3d 15 (2010); *State v. Bonner*, 290 Kan. 290, 296, 227 P.3d 1 (2010).

K.S.A. 21-3302(a) clearly requires that an overt act be alleged and that an overt act be proven. Nevertheless, there is no requirement that the State prove to the factfinder that it had *alleged* the overt act. As with other crimes, the State is required to prove the elements of the crime, which in the case of a conspiracy are (1) an agreement by two or more persons to commit a crime and (2) an overt act by one or more of the coconspirators in furtherance of the conspiracy (*i.e.*, an agreement and overt act made for the purpose of committing a crime). See *State v. Hill*, 252 Kan. 637, 641, 847 P.2d 1267 (1993). The sufficiency of the evidence test " ' "is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt." ' [Citation omitted.]" *State v. McCaslin*, 291 Kan. 697, 710, 245 P.3d 1030 (2011).

Applying the sufficiency of the evidence standard to the facts of this case, it can easily be concluded the jury could have found Tapia guilty beyond a reasonable doubt. The State had presented sufficient evidence of an agreement to commit burglary and an overt act in furtherance of the conspiracy agreement. The district court instructed the jury regarding these elements and instructed the jury it had to find that Tapia or an accomplice " 'acted in furtherance of the agreement by entering a 2005 Chev[r]olet pickup and/or garage at 1226 N. Calhoun.' " The jury was not—and need not

have been—required to find that the State had *alleged* this overt act in order to convict Tapia.

In an attempt to establish a failure of proof, Tapia constructs an argument that has as its foundation the dicta in *Shirley*, 277 Kan. at 665-66, relating to a potential jury instruction error. In this dicta, the *Shirley* court suggested that the allegation of the overt act must be in the complaint and that the complaint cannot be constructively amended by a jury instruction. Yet, this dicta raises an issue of due process, not sufficiency of the evidence.

Moreover, there are reasons to reject the dicta in *Shirley*. The suggestion that unique due process rules apply to the allegation of an overt act makes the allegation requirement of K.S.A. 21-3302(a) sacrosanct. Certainly, as noted by the *Shirley* court, the requirement that an overt act be alleged is unique in that it is the only criminal provision that requires a specific factual allegation. *Shirley*, 277 Kan. at 665. Yet, the requirement that an element be alleged is not unique and, even though there is a requirement that each element be alleged and each element be proved, there is no precedent for arguing that the failure to allege any other element means the evidence is insufficient. Rather, the various procedural mechanisms and remedies discussed in *Hall* come into play. There is nothing in K.S.A. 21-3302(a) that indicates these general rules of criminal procedure do not apply when a conspiracy is alleged. We conclude that the mere addition of a unique requirement that the factual circumstance of the overt act be alleged and the placement of that requirement in the same statute as a requirement of proof do not convey a legislative intent to create a unique sufficiency of the evidence analysis.

To illustrate the difference in treatment that Tapia's argument suggests, consider what would happen if the State had failed to allege the other element of a conspiracy, the agreement. See *Hill*, 252 Kan. at 641 (stating the two essential elements of conspiracy are [1] an agreement and [2] an overt act). Although the agreement is not mentioned in K.S.A. 21-3302(a), it must be alleged. See K.S.A. 22-3201(b) (requiring allegation of "essential facts constituting the crime charged"); K.S.A. 22-2202(8) (defining "complaint" to mean "a written statement under oath of the essential

facts constituting a crime"); *Hall*, 246 Kan. at 763-64 (explaining constitutional and statutory right to have elements of crime alleged). Further, the existence of an agreement must be proved beyond a reasonable doubt.

Yet, if an agreement had not been alleged, Tapia would not have been able to argue, as he does regarding the overt act, that he was entitled to a determination that there was insufficient evidence of his guilt. Rather, the defect in the complaint would have been subject to a *Hall* analysis or, if the allegation were constructively amended through a jury instruction, Tapia would have had to establish that this expansion impaired his substantial due process rights. See *State v. Trautloff*, 289 Kan. 793, 802, 217 P.3d 15 (2009) ("A jury instruction on the elements of a crime that is broader than the complaint charging the crime is erroneous. That error is excusable only where the substantial rights of the defendant are not prejudiced.").

Making the failure to allege the factual circumstances of the overt act unassailable, as Tapia suggests, would create an absurd dichotomy between an overt act allegation defect and a defect in alleging any other element of a crime. It is a fundamental rule of statutory interpretation that courts are to avoid absurd or unreasonable results. *Kansas One-Call System v. State*, 294 Kan. 220, 233, 274 P.3d 625 (2012). Even though the *Shirley* court was not considering the issue as argued by Tapia, the court reconciled this potential dichotomy by applying the *Hall* analysis when determining the remedy for the State's failure to allege an overt act as required by K.S.A. 21-3302(a). We likewise conclude that the failure to allege an overt act raises due process concerns and is subject to the general rules of criminal procedure, such as the *Hall* analysis, but does not require an insufficiency of evidence analysis. We overrule the holding to the contrary in *State v. Marino*, 34 Kan. App. 2d 857, 864, 126 P.3d 426, *rev. denied* 281 Kan. 1380 (2006), and disapprove of any contrary dicta in *State v. Shirley*, 277 Kan. 659, 89 P.3d 649 (2003).

Simply put, regardless of the terms Tapia uses to couch his argument, as the *Shirley* court concluded, the heart of such a claim is an allegation of a defective complaint. See *State v. McElroy*, 281

Kan. 256, 261-62, 130 P.3d 100 (2006) (finding that although defendant framed issue as a jury instruction violation, defendant was really challenging the sufficiency of the charging document to confer jurisdiction; thus, *Hall* applied). The State's failure to allege an overt act in furtherance of a conspiracy as required by K.S.A. 21-3302(a) does not mean that the evidence against a defendant is insufficient. Rather, the complaint is defective and subject to an analysis under *State v. Hall*, 246 Kan. 728, 764, 793 P.2d 737 (1990), *overruled in part on other grounds by Ferguson v. State*, 276 Kan. 428, 78 P.3d 40 (2003).

Under *Hall*, because Tapia did not raise his current challenge before the district court, the Court of Appeals correctly applied a commonsense interpretation of Tapia's complaint. *Tapia*, 42 Kan. App. 2d at 621-22 (see *Hall*, 246 Kan. at 764-65). Tapia presents no facts or arguments that address the *Hall* standards. Nor does Tapia raise any objection to the constructive amendment through the jury instruction. As the Court of Appeals stated, Tapia "places all his eggs in the *Marino* basket." *Tapia*, 42 Kan. App. 2d at 621.

We conclude the Court of Appeals correctly ruled that the State's error in its allegation of a specific overt act in furtherance of the conspiracy does not constitute reversible error based on an argument of insufficient evidence.

### ACCOMPLICE JURY INSTRUCTION

Tapia next argues that Garcia and Fraire were accomplices and, therefore, the district court erred in rejecting his request for an accomplice jury instruction. The State questions whether Garcia and Fraire were actually accomplices and maintains that any error in not giving the instruction was harmless.

During the jury instruction conference, Tapia's counsel requested "a special instruction on the testimony of co-conspirators that that [*sic*] should be considered with suspicion." The district court responded, "There is no such thing," and stated that it would not give any instruction regarding the testimony of coconspirators.

On appeal, Tapia claims he requested the instruction based on PIK Crim. 3d 52.18, which states: "An accomplice witness is one who testifies that (he)(she) was involved in the commission of the

crime with which the defendant is charged. You should consider with caution the testimony of an accomplice."

*Standard of Review*

The Court of Appeals applied the standard of review for when a district court refuses to give a requested instruction. *Tapia*, 42 Kan. App. 2d at 623; see *State v. Edwards*, 291 Kan. 532, 551, 243 P.3d 683 (2010) (view evidence in favor of party requesting instruction; considering instructions as a whole to see if proper state law and if jury could have been misled). We disagree that this is the appropriate standard of review, however, because, even though defense counsel requested an instruction, the request was for a coconspirator instruction, not an accomplice instruction. The district court's response that "[t]here is no such thing" could be interpreted in one of two ways, either of which lead us to conclude that defense counsel's request failed to properly object to the failure to give the accomplice instruction.

Under the first interpretation, the district court's comment can be understood to reflect the legal distinction between the terms "coconspirator" and "accomplice." There is overlap between the meaning of the terms and the legal concepts attached to each; accomplices can be coconspirators and vice versa, and both accomplice law and conspiracy law involve special considerations regarding group crimes. But the terms are not synonymous. Nor is the law applying to accomplices and coconspirators identical or even fully parallel. See 16 Am. Jur. 2d, Conspiracy § 3. Because of these distinctions, defense counsel's request for a "coconspirator" instruction was not precise, and the district court may have recognized the distinctions and considered the defense request literally.

The second interpretation is that the district court simply did not understand the request because it was not stated "distinctly" as required by K.S.A. 22-3414(3), which states in part:

"No party may assign as error the giving or failure to give an instruction, including a lesser included crime instruction, unless the party objects thereto before the jury retires to consider its verdict *stating distinctly the matter to which the party objects and the grounds of the objection* unless the instruction or the failure to give an instruction is clearly erroneous." (Emphasis added.)

While we would not go so far as to hold that a jury instruction request must be made by referring to a pattern jury instruction by number in order to meet the requirement that an objection be stated distinctly, in this case we conclude Tapia was required to clarify the court's apparent misunderstanding of his request in order to make his objection distinct. Once it was clear the district court did not understand the defense request for an accomplice instruction or did not understand that a pattern instruction was being requested, Tapia needed to clarify the request and refer the court to the pattern instruction.

As we have explained, "it is important to remember that the purpose of requiring an objection is to allow the district court to correct an error, if one occurred. [Citation omitted.]" *State v. Ellmaker*, 289 Kan. 1132, 1139, 221 P.3d 1105 (2009), *cert. denied* 130 S. Ct. 3410 (2010). In *Ellmaker*, the defendant objected to an instruction on one ground but asserted a different argument on appeal. Under those circumstances, even though the defendant had objected to the instruction, we concluded the defendant failed to comply with K.S.A. 22-3414(3). *Ellmaker*, 289 Kan. at 1139. Likewise, here, Tapia's request for an instruction can be interpreted as asking for a different instruction from the one now being argued or, alternatively, as being so indistinct as to not clearly communicate the request.

The implications of the failure to comply with K.S.A. 22-3414(3) were recently clarified in *State v. Williams*, 295 Kan. 506, 286 P.3d 195 (2012). We first explained that a jury instruction issue, like all issues on appeal, is subject to a three-step process:

"(1) determining whether the appellate court can or should review the issue, *i.e.*, whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) considering the merits of the claim to determine whether error occurred below; and (3) assessing whether the error requires reversal, *i.e.*, whether the error can be deemed harmless." *Williams*, 295 Kan. 506, Syl. ¶ 1.

We then held:

"K.S.A. 22-3414(3) establishes a preservation rule for instruction claims on appeal. It provides that no party may assign as error a district court's giving or failure to give a particular jury instruction, including a lesser included crime instruction, unless: (a) that 2 party objects before the jury retires to consider its verdict, stating

distinctly the matter to which the party objects and the grounds for objection; or (b) the instruction or the failure to give the instruction is clearly erroneous. If an instruction is clearly erroneous, appellate review is not predicated upon an objection in the district court. *Williams*, 295 Kan. 506, Syl. ¶ 3.

The determination of whether the instruction is clearly erroneous employs a two-step process. First, "the reviewing court must . . . determine whether there was any error at all. To make that determination, the appellate court must consider whether the subject instruction was legally and factually appropriate, employing an unlimited review of the entire record." *Williams*, 295 Kan. 506, Syl. ¶ 4. The second step applies only if it is determined there was error. Under the second step, "the court assesses whether it is firmly convinced that the jury would have reached a different verdict had the instruction error not occurred. The party claiming a clearly erroneous instruction maintains the burden to establish the degree of prejudice necessary for reversal." *Williams*, 295 Kan. 506, Syl. ¶ 5.

*The Accomplice Instruction—Legally and Factually Appropriate*

We first consider the step of whether an accomplice instruction was legally and factually appropriate. In past cases, despite the differences between an accomplice and a coconspirator, we have approved the use of the pattern accomplice instruction in conspiracy trials. And we have concluded that "[w]hen an accomplice testifies, and whether that testimony is corroborated or not, the better practice is for the trial court to give a cautionary instruction. If the instruction is requested and is not given, the result may be error." *State v. Moore*, 229 Kan. 73, 80, 622 P.2d 631 (1981); see PIK Crim. 3d 52.18, Notes on Use (better practice is to give this cautionary instruction regardless of whether there is corroborating evidence, as long as the accomplice is not also a codefendant in the trial).

Whether the instruction should be given naturally depends on whether the witness is an accomplice. *State v. Simmons*, 282 Kan. 728, 734, 148 P.3d 525 (2006). In *Simmons* we explained that " '[a] person is an "accomplice" of another in committing a crime if, with the intent to promote or facilitate the commission of the

crime, he solicits, requests, or commands the other person to commit it, or aids the other person in planning or committing it.' " *Simmons*, 282 Kan. at 737 (quoting 1 Torcia, Wharton's Criminal Law § 38, p. 220 [15th ed. 1993]). Garcia's admitted role as the driver and lookout clearly places him in the role of accomplice, and the evidence from Garcia's initial statement in which he claimed that Fraire participated in the burglary of the garage supports the conclusion Fraire was an accomplice as well. We, therefore, conclude the accomplice instruction was legally and factually appropriate under the facts of this case.

*Harmless Error*

In past cases, in determining whether the failure to give an accomplice instruction was reversible error, we have examined the extent and importance of an accomplice's testimony, as well as any corroborating testimony. *State v. DePriest*, 258 Kan. 596, 605, 907 P.2d 868 (1995); *Moore*, 229 Kan. at 80-81. We have also held:

"[N]o reversible error occurs due to a trial court's failure to give a cautionary accomplice witness instruction if a witness' testimony is corroborated by other evidence and the witness' testimony does not provide the sole basis for a resulting conviction. [Citations omitted.] . . . .

"Further, a failure to provide the jury with the cautionary accomplice witness instruction of PIK Crim. 3d 52.18 is not error when the defendant's guilt is plain or when the jury is cautioned about the weight to be accorded testimonial evidence in other instructions. [Citation omitted.]" *Simmons*, 282 Kan. at 740.

In this case, while the accomplices' testimony, specifically Garcia's, was key to the State's case, defense counsel effectively called into question both Garcia's and Fraire's veracity. Defense counsel elicited that Garcia and Fraire were initially charged with the same offenses as Tapia but were granted diversions. Defense counsel extensively cross-examined Garcia on the inconsistency between his statement to law enforcement officers, in which he incriminated both Tapia and Fraire as burglars, and his trial testimony, in which he stated that only Tapia exited the vehicle. In response, Garcia admitted that his statement to officers was "untruthful." Both Garcia's and Fraire's testimony was corroborated by testimony that the property stolen from the pickup truck and Mondgold's garage were

found in the vehicle in which Tapia was riding and in Tapia's pockets. Further, Tapia was the one identified as wearing clothes matching those worn by the burglar, and Parr saw him wearing baseball gloves. Also, the district court provided the jury with the general instruction on witness credibility. Finally, there was overwhelming evidence of Tapia's guilt.

Considered in this light, we are not firmly convinced that the cautionary accomplice instruction would have made a difference in the jury's verdict.

### *APPRENDI* and *IVORY*—USE OF CRIMINAL HISTORY

Tapia also contends the use of his prior convictions in his criminal history score to enhance his sentences without requiring the history to be included in the complaint and proved to a jury beyond a reasonable doubt violated his constitutional rights under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). Tapia acknowledges that this court has previously rejected this argument. See, *e.g.*, *State v. Bennington*, 293 Kan. 503, 534, 264 P.3d 440 (2011) (citing *State v. Ivory*, 273 Kan. 44, 46-48, 41 P.3d 781 [2002]). The Court of Appeals correctly rejected Tapia's contention. *Tapia*, 42 Kan. App. 2d at 623.

### AGGRAVATED TERMS IN GRID BOXES

Finally, Tapia argues his constitutional rights were violated when the district court sentenced him to the aggravated terms of incarceration within the applicable sentencing grid boxes for each of his convictions. Tapia acknowledges a line of decisions in which this court has rejected this argument, but he raises it to preserve federal review. He does not offer a persuasive reason for us to abandon our prior decisions, which require us to hold that this court is without jurisdiction to consider this issue because Tapia received presumptive sentences. See K.S.A. 21-4721(c)(1); *State v. Bogguess*, 293 Kan. 743, 755, 268 P.3d 481 (2012); *State v. Johnson*, 286 Kan. 824, 840-52, 190 P.3d 207 (2008); see also *State v. Huerta*, 291 Kan. 831, 839-40, 247 P.3d 1043 (2011) (reaffirming that appellate court does not review claims on direct appeal that defendant's presumptive sentence has a constitutionally based infirmity).

Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

MORITZ, J., not participating.

THOMAS H. SACHSE, District Judge, assigned.

\* \* \*

JOHNSON, J., dissenting: I dissent for two reasons: (1) I believe the statute defining conspiracy, K.S.A. 21-3302(a), does create a sufficiency of the evidence problem when the complaint fails to allege any overt act; and (2) I continue to be baffled by this court's stubborn adherence to the jurisdiction-by-waiver rule that was manufactured from whole cloth in *State v. Hall*, 246 Kan. 728, 793 P.2d 737 (1990), *overruled in part on other grounds by Ferguson v. State*, 276 Kan. 428, 78 P.3d 40 (2003).

Like the majority, I will start by accepting the premise that the complaint in this case was defective because it failed to meet the K.S.A. 21-3302(a) requirement that the overt act in furtherance of the conspiracy must be alleged in the charging document. Simply put, the complaint in this case was missing a necessary element of the crime.

With respect to the question of the evidence sufficiency, I also agree with the majority's assertion that "K.S.A. 21-3302(a) clearly requires that an overt act be alleged and that an overt act be proven. Nevertheless, there is no requirement that the State prove to the factfinder that it had *alleged* the overt act." *State v. Tapia*, (No. 100,596, this day decided) slip op. at 15. Obviously, the jury need not be concerned with what the prosecutor put into the charging document, because the sufficiency of a complaint, like the sufficiency of the evidence, is a *legal* question to be determined by a judge, not a jury.

But the majority's disconnect, in my view, is in considering the elements of conspiracy to be simply an agreement and an overt act in furtherance of the conspiracy. Thereafter, the majority proceeds as if there is no legal connection whatsoever between the overt act alleged and the overt act proven. The suggestion is that if evidence exists from which the jury could reasonably find that the defendant or a coconspirator committed *any* overt act, then the evidence is sufficient to support the conviction. Yet the statute does not permit a person to be convicted of a conspiracy unless "an overt act in furtherance of such conspiracy is *alleged and proved* to have been committed by such person or by a co-conspirator." (Emphasis added.) K.S.A. 21-3302(a). I cannot read that language as permitting the State to allege one overt act [or no overt act] and then prove another overt act. To the contrary, in order to satisfy the majority's second element—an overt act—the State must prove that the defendant or a coconspirator committed the specific overt act that the State's charging document alleged was committed. *Cf. State v. Chaffee*, 36 Kan. App. 2d 132, 142, 137 P.3d 1070 (2006) (State cannot charge aggravating kidnapping to facilitate murder and then convict defendant of kidnapping to facilitate some other crime not identified in information).

Here, the State failed to "allege and prove" an overt act in furtherance of the charged conspiracy because it failed to allege an overt act. Obviously, there can never be sufficient evidence to prove an *alleged* overt act, as clearly required by K.S.A. 21-3302(a), where there has been a failure to allege *any* overt act. In other words, one cannot prove that which does not exist. The fact that the State may have presented evidence from which a jury could rationally find the existence of overt acts which the State did not allege is of no consequence here. The State failed to present sufficient evidence to support the "allege and prove" overt act element which was statutorily necessary for a conspiracy conviction. I would reverse based upon an insufficiency of the evidence of the crime of conspiracy, as charged.

Figuratively mounting my donkey and taking up my lance, I charge toward the windmill disguised as the *Hall* rule. As the majority describes, under the "pre-*Hall*" standard, if a charging doc-

ument "does not set out the essential elements of the crime, it is fatally defective and the conviction must be reversed for *lack of jurisdiction.* [Citation omitted.]' *Shirley*, 277 Kan. at 661-62." (Emphasis added.) *Tapia*, slip op. at 9. In other words, if a complaint is missing essential elements of the charged crime, the district court does not have subject matter jurisdiction to convict the defendant of that crime.

Yet *Hall* established a new rule for complaint challenges where the defendant had failed to challenge the defective complaint in the district court through a motion for arrest of judgment. Under that new rule, the defendant must establish certain prejudice, impairment, or limitation of constitutional rights in order to obtain a conviction reversal for a defective complaint. See *State v. Portillo*, 294 Kan. 242, 254-55, 274 P.3d 640 (2012). In essence, by failing to file a motion for arrest of judgment in the district court, a defendant waives the jurisdictional claim arising from a charging document with a missing element. As I shared in my dissent in *State v. Inkelaar*, 293 Kan. 414, 444, 264 P.3d 81 (2011):

"I cannot square that approach with the rather fundamental principle that subject matter jurisdiction may be raised at any time, whether for the first time on appeal or even on the appellate court's own motion. *State v. Sales*, 290 Kan. 130, 135, 224 P.3d 546 (2010). Moreover, a party's failure to challenge a district court's jurisdiction cannot create subject matter jurisdiction where it did not already exist. *State v. Hoffman*, 45 Kan. App. 2d 272, 275, 246 P.3d 992 (2011) (parties cannot confer subject matter jurisdiction by consent, waiver, or estoppel; a failure to object to the court's jurisdiction does not invest the court with the requisite subject matter jurisdiction)."

The majority's continued use of *Hall*'s court-made exception to a jurisdictional rule is particularly curious, given that the author and most of the members of this majority recently voted unanimously to "overrule *Johnson v. American Cyanamid Co.*, 243 Kan. 291, 758 P.2d 206 (1988), and *Schroeder v. Urban*, 242 Kan. 710, 750 P.2d 405 (1988), to the extent they authorize an exception to a jurisdictional rule." *Board of Sedgwick County Comm'rs v. City of Park City*, 293 Kan. 107, 120, 260 P.3d 387 (2011). In that *Park City* case, we definitively declared that " 'this Court has no authority to create equitable exceptions to jurisdictional require-

ments.' " 293 Kan. at 120 (quoting *Bowles v. Russell*, 551 U.S. 205, 214, 127 S. Ct. 2360, 168 L. Ed. 2d 96 [2007]). Yet the majority clings to *Hall*'s jurisdictional exception under the guise that Tapia has not specifically asked us to jettison it. I would submit that the *Hall* exception to the jurisdictional defect of elements missing from a charging document "deserves a proper burial," and that "[w]e should administer last rites with this opinion." *State v. Bryant*, 272 Kan. 1204, 1210, 38 P.3d 661 (2002) (Six, J., concurring; referring to res gestae as an independent evidentiary concept).

BEIER, J., joins the foregoing dissenting opinion.